John R. Hayes, Appellee, v. Wabash Railroad Company, Appellant.

Gen. No. 16,968.

1. PLEADING—*where declaration purports to state cause of action under the federal statute.* In a personal injury action, the fact that plaintiff's declaration purports to state in all its counts a cause of . action under the Federal Employers' Liability Act and in one, also a cause of action under the Federal Safety Appliance Act, does not eliminate the possibility of its stating a cause of action under the common law of Illinois.

2. JURISDICTION—*where declaration states cause of action under federal statutes.* In a personal injury action the fact that plaintiff's declaration states a cause of action under the Federal statutes does not deprive the State courts of jurisdiction.

3. STATUTES—*cumulative remedies.* Remedies given by statute for personal injuries may be cumulative and not in abrogation of a right of action at common law.

4. PLEADING—*when allegations may be regarded as surplusage.* In a personal injury action where the allegations in the declaration, that the defendant was engaged and the plaintiff employed in interstate commerce are not descriptive of any fact or condition essential to recovery under the common law, they may be regarded as surplusage.

5. PLEADING—*when declaration is sufficient statement of cause of action.* In a personal injury action where plaintiff, a switchman, on defendant's railway was injured by being knocked from a car when the train became uncoupled while being backed into an elevator, the declaration is *held* to state a good cause of action, the allegations that defendant was engaged in interstate commerce being regarded as surplusage.

6. PLEADING—*causal connection between defendant's negligence and plaintiff's injury.* In a personal injury action where the declaration alleges that defendant's track was negligently left dilapidated, that because of that cars uncoupled, that because of the uncoupling they rolled with great speed and without control into an elevator, that solely from this the plaintiff was in reason obliged to look for means of escape from a position in which he was placed in the course of his duty and in so doing was injured, there is a sufficient statement of a direct causal connection between defendant's negligence and plaintiff's injury.

7. NEGLIGENCE—*when question for jury.* In a personal injury action, the question whether plaintiff, a switchman on defendant's railway, was in the discharge of his duty and in the exercise of

due care, in attempting to protect himself from injury, at the time cars became uncoupled is for the jury.

8. JURY—*question of fact.* In a personal injury action the question whether the uncoupling of cars resulted from the condition of the track is for the jury.

9. INSPECTION—*duty of railroad as to tracks.* In a personal injury action, where plaintiff's injury is alleged to have resulted from a defective condition of the track causing cars to be uncoupled, it is *held* that the defendant railroad owed a duty of inspection and investigation of the condition while plaintiff is held only to observation.

10. ASSUMED RISK—*defective tracks.* In a personal injury action, where the defective condition of defendant's tracks is alleged to have uncoupled cars and caused injury to plaintiff, a switchman, the decision of the jury that plaintiff did not assume the risk is affirmed where the evidence shows plaintiff did not understand and appreciate the danger.

11. EVIDENCE—*as to custom of switchmen to ride between cars.* In a personal injury action, where plaintiff, a switchman in the employ of defendant, was injured by being knocked from a car, evidence that switchmen were accustomed to ride between the cars is admissible.

12. EVIDENCE—*as to removal of ties after the accident.* In a personal injury action, where plaintiff's injury is alleged to have been caused by the defective condition of defendant's tracks, there being evidence on direct examination that the ties were not bad enough to take out at the time of the accident, it is proper to show on cross-examination that they were rotten a week afterward and were then taken out.

13. DAMAGES—*for loss of arm, when not excessive.* In a personal injury action, where a switchman lost his arm, a judgment for $14,000 is *held* not excessive.

Appeal from the Superior Court of Cook county; the Hon. MARCUS KAVANAGH, Judge, presiding. Heard in this court at the October term, 1910. Affirmed. Opinion filed May 26, 1913.

**Statement by the Court.** This is an appeal from a judgment of the Superior Court of Cook county for $14,000 rendered May 28, 1910, against the appellant, the Wabash Railroad Company, in a suit brought against it by the appellee, John R. Hayes. For convenience we shall in this statement and in the opinion following uniformly designate Hayes as plaintiff and the Railroad Company as defendant.

The judgment was rendered on the verdict of a jury,

which verdict, however, was for $18,000. When a motion for a new trial came on to be heard by the Court below the plaintiff remitted $4,000 and thereupon the record shows that after argument, etc., and ''in consideration of said remittitur,'' the motion for a new trial was denied. A motion in arrest of judgment was also overruled and the judgment in question entered.

A synopsis of the pleadings will show the nature of the case resulting in this judgment.

The first count of the declaration alleges the defendant to be the owner and operator of a railroad from Chicago into different States and a common carrier thereby of commerce between several States; that it had a track extending into and ending in a butting post inside a grain elevator in Chicago; that the plaintiff was employed as switchman in the defendant's handling of commerce, ''to assist as its servant in the work of putting said cars into and taking them out of said elevator, and that it was the duty of the defendant to exercise due care to maintain said track in a reasonably safe condition for the purposes for which it was used.''

The count then proceeds to allege that the defendant violated said duty by permitting ties of said track to be broken, rotten and decayed and the track to be uneven and dilapidated, in consequence of which cars run upon and over said track were likely to become uncoupled, endangering the plaintiff and other servants of the defendant; that on July 9, 1908, the defendant, while engaged in Inter State Commerce and in said commerce had six cars coupled together and to one of its switch engines, and by means of said engine was shoving said cars along the track and into the elevator, that the plaintiff while employed in such commerce and exercising ordinary care, was riding between two of the forward cars of this string of cars; that as the result of the condition of said track two other cars of the string between the plaintiff and the engine became uncoupled from each other and thereby

all cars forward of the uncoupling point, including those between which the plaintiff was riding, were detached from the power of the engine and could not be controlled or stopped by said engine, and ran into the elevator and against the butting post at great speed and were wrecked.

The further allegation is: That when the plaintiff learned the cars had become uncoupled they were closely approaching said butting post, "and he * * * believed and was justified in believing that said cars would run against said butting post with great force, * * * and that if he remained between said cars until they struck said butting post he was * * * likely to be severely injured or killed, and in order to avoid such injuries or death, he thereby then and there attempted to get from between said cars and while he was doing so and while, as he alleges, he was in all respects exercising ordinary care for his own safety, he was * * * knocked down and from between said cars by an obstruction alongside of said track," and that one of the cars ran over the plaintiff's arm injuring it so as to require amputation.

The second count adds to the allegations of the first count the averment that the defendant unlawfully and negligently was using cars coupled by drawer bars not complying with the standard required by the Federal Safety Appliance Act and the action of the Inter State Commerce Commission thereunder, and that this unlawful action, together with the unsafe and improper condition of the track, caused the cars to become uncoupled, with the results as detailed in the first count.

The third count makes no reference to the use of improper drawer bars, but adds to the allegations of the first count one that "the defendant's engineer, by means of the engine, pushed and ran said cars upon and along said track at an unusually high and dangerous rate of speed," and that the uncoupling of the cars and the subsequent injuries to the plaintiff were

the direct result thereof and of the unsafe and improper condition of the track.

The fourth count alleges the same matters as the first count, and in addition that the brake appliances with which one of the cars was equipped for the purpose of setting the brake and stopping the car was in such a defective and inoperative condition that the brake could not be set; that the defendant knew or should have known of this, but that the plaintiff did not learn of it in time to avoid the injuries complained of; that while he was riding on top of one of the forward cars of the string of cars as they were being run towards the elevator, he attempted to set the brake on the car with the defective brake appliances in order to check and stop said car, but was unable to do so on account of said defective condition of the brakes, and as the car on which he was riding was closely approaching the door of the elevator, he climbed down between two of the forward cars of said string of cars in order to avoid being struck by the door; that while so riding between said cars and after the cars had entered the elevator and were closely approaching the butting post, "he learned that the forward cars of said train had accidentally become uncoupled from said engine, and then knew that as the brake was not set upon said car upon which he had attempted to set it," they were likely to run against the butting post at a high rate of speed, and he be injured or killed, wherefore he attempted to get from between said cars and was struck by an obstruction alongside of said track and knocked down onto the track and run over, with the result of a loss of his arm.

The defendant pleaded the general issue of not guilty to this declaration.

SHOPE, ZANE, BUSBY & WEBER, for appellant; J. L. MINNIS, of counsel.

JAMES C. McSHANE, for appellee.

MR. JUSTICE BROWN delivered the opinion of the court.

This case has been argued in the briefs and printed arguments of the respective parties very thoroughly and elaborately, with much analysis of the evidence and with a great wealth of cited authorities upon various points which it is contended are properly involved in its decision.

We have given it on our part a prolonged and very careful consideration. But the conclusions which we have reached do not require for their expression or discussion an opinion proportionate in extent.

In view of the contention of the plaintiff that the court below made an error by which, however, the defendant should not profit, in instructing the jury, at the defendant's request, that the evidence was "insufficient to show that the train of cars or any of them upon which the plaintiff was working at the time of his injury was engaged in inter state traffic," thus withdrawing from the jury the alleged effect of the Federal Safety Appliance Act and the Federal Employers' Liability Act, and leaving them to consider in full effect under the law of Illinois the defenses of contributory negligence and assumed risk,—we have examined at length the arguments and authorities of the respective counsel on this matter. But a discussion of it herein, or even an expression of our conclusions thereon, does not seem to us necessary or even desirable; for we have determined that the pleadings and the evidence made a proper case for the jury to pass on, and justified their verdict, even under the theory which was taken by the trial Judge and embodied in his instructions. Under those instructions it inhered in the verdict of the jury that they found the plaintiff not guilty of contributory negligence but in the exercise of ordinary care, and that they found that he had not assumed the risk of the injury. These conclusions we think they were justified in reaching. Therefore we express no opinion on whether the cars

on which plaintiff was working were engaged in inter state commerce.

The defendant maintains, however, that inasmuch as the plaintiff's declaration purports to state in all its counts a cause of action under the Federal Employers' Liability Act, and in one also a cause of action under the Federal Safety Appliance Act, this eliminates the possibility in a legal and technical sense of its stating a cause of action under the common law of Illinois.

The contention was originally made by the defendant that by the statement of this cause of action under the Federal statutes, the jurisdiction of the state courts of Illinois was ousted; and that the matter became one of Federal cognizance solely. This contention, in view of the decision of the Supreme Court of the United States in *Mondou v. New York, N. H. and H. R. Co.*, 223 U. S. 1, the defendant has abandoned, but still insists that although the Superior Court of Cook county had jurisdiction of the case at bar, it was bound, on holding as it did that the participation of the cars in question in Inter State Commerce was not proven, to have instructed the jury that no cause of action as stated in the declaration had been proven and that they should therefore return a verdict for the defendant. To sustain this point counsel have cited various opinions of District Judges of the United States holding Circuit courts, in cases in which they have decided either that the Federal statutes involved have superseded state statutes regulating the liability for personal injuries of railroads engaged in Inter State Commerce, inconsistent therewith, or have held that in the Federal courts and as affecting the question whether a suit may be brought in a district in which the plaintiff resides and the defendant does not, a suit in which the declaration states a case under these statutes cannot be held to rest *"only"* on diverse citizenship. See for example, *Whittaker v. Illinois Cent. R. Co.*, 176 Fed. Rep. 130.

We cannot agree with the defendant's counsel as to the controlling force in this case of these decisions. So far as expressions in the opinions cited and quoted may seem to give color to the contention that the mere statement in a declaration that the plaintiff was injured while engaged in Inter State Commerce must serve to render nugatory in a state court the allegations which, without this one, show a complete cause of action under the common law of the state, they are and must from the nature of things be merely *obiter dicta* as applied to the case at bar. Rightly interpreted, however, we think there is nothing in the opinions signifying an intention so to hold. At all events, we think such a holding contrary to sound logic and inconsistent with the well considered reasoning of many opinions in various jurisdictions that remedies given by statute for personal injuries may be cumulative and not in abrogation of a right of action at common law. *Kleps v. Bristol Mfg. Co.*, 189 N. Y. 516, as reported in 12 L. R. A. (N. S.), p. 1038, and the cases cited in the note thereon; *Payne v. New York, S. & W. R. Co.*, 201 N. Y. 436.

We hold that the allegations in the first, second and fourth counts of the declaration, that the defendant was engaged and the plaintiff employed in Inter State Commerce were not descriptive of any fact or condition essential to recovery under the common law, if the other allegations of those counts were sustained, and that therefore they may be regarded as surplusage. *Chicago & G. T. R. Co. v. Spurney*, 197 Ill. 471.

Treating as surplusage the allegations relating to Inter State Commerce in the first count of the declaration, to which count we purpose to confine our discussion, we find this cause of action stated—that the defendant was the operator of a railroad, of which a part was a track extending into an elevator and ending at a butting post therein; that the plaintiff was employed as a switchman in putting cars into said elevator; that it was the duty of the defendant to exer-

cise due care in maintaining said track in a reasonably safe condition for the purpose of which it was provided; that in violation of said duty it permitted the said track to remain unsafe and in an improper condition of repair for such use, in that certain ties in said track were broken, rotten and decayed and said track was uneven and in a dilapidated condition, in consequence of which, to the knowledge or legally imputed knowledge of the defendant, but through no lack of ordinary care of the plaintiff, unknown to him, the cars running on said track were likely to become uncoupled and the plaintiff exposed to great danger; that the plaintiff, while in the discharge of his duty and in the exercise of ordinary care, and while assisting in the work of shoving by a switch engine six cars coupled together and to the switch engine along said track and into the elevator, was riding between two of the cars of said string of cars as they were being pushed along into said elevator; that as a direct result of the unsafe and improper condition of said track, two other cars of said string of cars, which other cars were between the plaintiff and said engine, became uncoupled from each other, and in consequence the cars between which the plaintiff was riding were detached from the engine and from the cars which remained coupled to the engine, and could not be controlled or stopped by said engine, as they would have been if this uncoupling had not occurred; that as a direct result of this, the said two cars between which the plaintiff was riding unavoidably ran along said track into said elevator at a high rate of speed, and were wrecked by striking said butting post; that when the plaintiff learned that the said cars had become uncoupled they were closely approaching said butting post, and he believed and was justified in believing that if he remained between said cars until they struck the post he would be severely injured or killed, and therefore, in the exercise of ordinary care for his own safety, he attempted to get from between said cars

and in so doing was knocked down and from between said cars by an obstruction alongside of said track, was run over by the cars and lost thereby his arm.

We think this is a sufficient statement of a cause of action arising from the neglect of the defendant to take care that its track should be in reasonably safe condition, and that the connection between that negligence and the injury of the plaintiff is clearly alleged and shows the one to have been the proximate cause of the other. It is true that it is stated that there were intermediate or concurrent matters involved in the accident. There are generally such things between the *"causa causans"* and the ultimate result. But in this count it is stated with sufficient clearness for any one to understand, that the track was negligently left dilapidated; that because of that the cars uncoupled; that because of the uncoupling they rolled with great speed and without control into the elevator; that solely from this the plaintiff was in reason obliged to look for means of escape from a position in which he was placed in the course of his duty and in so doing was injured. The causal connection between the first and last of these propositions, namely, that the track was negligently left dilapidated and that plaintiff was injured, seems to us direct, notwithstanding the intermediate steps.

Defendant maintains, however, that whether or not stated, no sufficient causal connection was *proved,* to warrant the jury in finding the negligence of the defendant in regard to its track the proximate cause of the plaintiff's injury. It contends that the plaintiff is not shown to have been necessarily or properly between the cars and therefore in a position which required his attempt to escape the impending crash by jumping or looking for a place to jump near the pillar or "obstruction," as the declaration terms it, by which he was struck and thrown to the tracks inside of the elevator. Therefore, it is said, not even the uncoupling of the cars and the consequent speed with which

they were rushing uncontrolled to the butting post, can be considered proximate causes of the injury. That proximate cause rather was the plaintiff's own acts in taking or remaining in the position between the cars, or, at the worst that can be said of the defendant, in its having the pillars in its elevator too near the track, no complaint of which is made.

With this contention there can, for practical purposes, be connected another position taken by the defendant, that the plaintiff, by riding between the cars into the elevator, and by projecting his body sufficiently from the train to be hit by the pillar, or by attempting to jump with the same result, was guilty of negligence proximately contributing to the injury, which of course, if the common law governs, prevents his recovery.

It would not be useful for us to discuss in detail, as counsel have done, the evidence which bears on these contentions of the defendant. We have carefully and patiently considered it all in the light of the elaborate opposing arguments on it. It seems to us on the whole that fair questions for the jury were whether the plaintiff was not where he was when the couplings parted, in the discharge of his duty as usually and properly performed, and in the exercise of due care; whether, considering all things, he was not placed by that parting, by his inability to set the brake (even if that arose from no defect in the brake itself) and by the increasing speed of the cars which had been freed from the drag which the forward car and the engine, with the power shut off, usually made at that point,—in a position of imminent danger which allowed him no time and imposed on him no obligation to balance chances and attempt one method of escape instead of another, even if subsequent events showed that it would have been less dangerous; in short, whether his conduct was not, up to the time of the injury free from any taint of blameworthy negligence.

It inhered in the verdict of the jury, we think, under

the instructions of the court, that they found it was, and we are not inclined even to disagree with their conclusion, much less to overrule it.

Defendant, however, still further maintains that the evidence does not show that the uncoupling resulted from the condition of the track. It might, it is argued, have resulted from other causes. We think this also was an issue for the jury to decide, and even more strongly than in relation to the previous questions indicated, we incline to the opinion that their decision of it was correct. The evidence is convincing that the couplers on the two cars that parted were closed and locked when they were examined immediately after the accident, and that they were without defect or in any condition which could explain their parting and remaining so closed, unless there had been a drop of several inches by one of the cars from the level of the other. The weight of the evidence also seem to us to show not only that the couplers were closed and locked when examined, but also that they had remained so during the parting. The hypothesis that they or either of them could have been opened when the parting occurred, but closed afterward by the jar of collision with the post, furnished ground undoubtedly for argument to the jury, but there was evidence inconsistent with it, and this evidence seems to us to negative it. So the jury evidently considered. If they held that the evidence was sufficient to show that one of the cars which parted sank below the other, so that the couplers parted perpendicularly and one overrode the other, they were also amply justified in finding that a "low joint" in the rails of the track at the point very near which at least the uncoupling occurred, where the track had been pieced or spliced with a short rail about four feet long, which "went up and down" under the weight of one man and rested on a tie so rotten that the piece of it outside the rail could be kicked off with the foot, was the direct cause of the uncoupling.

As to its being negligence in the defendant to allow such a condition to exist in a track over which men were shoving cars, and where there was a grade which rendered it certain that the cars would run with an increasingly accelerated speed if an uncoupling took place, there can hardly be two opinions. It is by no means necessary to hold that the tracks in this switch yard should be kept in the condition required on the main line, to reach the conclusion that reasonable care had not been taken by the defendant to keep its tracks in a reasonably safe condition.

It is contended very vigorously that the plaintiff must be held to have assumed the risk of this condition of the track. We do not think so. It was a question for the jury, and it was decided by them in our opinion, correctly. The defendant owed the duty of inspection and investigation of the condition; the plaintiff was held only to observation. He might well have known that the joint was "low" and the track rough, so that cars "swayed" in passing over it, and yet not have known the depth to which the weight of a loaded car would depress the rail, nor appreciated the danger resulting therefrom. If he did not so understand and appreciate the danger, he did not assume the risk. The evidence strongly tends to this conclusion.

The final contentions of the defendant are that incompetent evidence was admitted; that two instructions tendered by the defendant, which should have been given, were refused, and that a new trial should have been granted because the amount of the damages assessed by the jury showed passion and prejudice, and even after the remittitur of $4,000 is excessive.

We do not hold that there is reversible error to be found in any of these matters.

The first evidence complained of is that the switchmen were accustomed to ride between the cars as the cars were pushed into the elevator. This was properly

admitted both as bearing on the question of the alleged contributory negligence of the plaintiff and because the defendant's counsel had indicated that he was intending to prove or attempt to prove that orders had been given that such a position should not be taken by the men. He failed to adduce any evidence of such an order, but he afterward tendered and obtained an instruction based on the assumption that the jury might believe that such an order had been given.

The other evidence which is alleged to be incompetent is the statement made on cross-examination by the defendant's track foreman, that new ties were put under this track a week or so after the accident. There was no error in this, we think. On direct examination the witness had testified that the ties were not bad enough to take out at the time of the accident. We think cross-examination was proper to show that they were rotten a week afterward and that he did then take them out.

We do not think the refusal of tendered instructions 14 and 15 was error. The jury were correctly and sufficiently instructed as to contributory negligence, and in our opinion to have called attention to the specific acts which these instructions particularize and segregate would have been misleading. All the circumstances and actions of the plaintiff, taken together with the imminence and anticipation of danger or the want of it, had properly to be considered in judging of his exercise or want of ordinary care.

The damages are large, but the amount of earning power of an arm as compared with that of the money damages assessed for its loss is not now, if it ever was, the sole test which can be applied to ascertain if the damages are excessive; and we do not feel that we should interfere with the judgment of the jury in this case under the practice now established in case of such injuries.

The judgment of the Superior Court is affirmed.

*Affirmed.*