[No. 11626.   Department One.   February 6, 1914.]

## J. A. BAIRD, *Respondent*, v. NORTHERN PACIFIC RAILWAY COMPANY, *Appellant*.[1]

RAILROADS—INJURIES TO LICENSEES — NEGLIGENCE — CONTRIBUTORY NEGLIGENCE. In an action for personal injuries sustained by a railroad employee, the negligence of the defendant and the contributory negligence of the plaintiff, are questions for the jury, where it appears that plaintiff was riding home on the engine by consent after hours, and was thrown to the ground when the engine was started with a violent jerk, while he was in the act of stepping off after the engine had stopped at the usual place for employees to alight.

SAME—ACTION BY LICENSEE—COMPLAINT—SUFFICIENCY. A complaint by a railroad employee for injuries sustained after hours, in riding home on the engine by consent, states a cause of action at common law, where it shows that the injury was due to the carelessness of the engineer in starting the engine with a sudden jerk while plaintiff was in the act of alighting, after the engine had stopped for the purpose of letting him off.

SAME—INJURY TO LICENSEE—PLEADING—VARIANCE. In an action against an interstate railroad by an employee for personal injuries alleged to have been sustained while engaged in interstate commerce, in which it is doubtful if the complaint states a cause of action under the Federal statute, but does state a cause of action at common law, and the defendant so construed it, setting up common law defenses without asking for an election, evidence sustaining the right of action at common law is not a departure.

SAME. In an action for personal injuries sustained by a railroad employee after hours while being transported from his work, it is not a fatal variance that the complaint alleged as a conclusion that he was at the time in the defendant's employ, and that the proof showed that he was a licensee, riding by invitation, where the complaint set out the facts, and the defendant could not have been surprised.

MASTER AND SERVANT — FELLOW SERVANTS — EXISTENCE OF RELATION. A workman in a railroad gravel pit who had ceased his labors and was riding home on the engine by permission, and the engineer in charge of the engine, are not fellow servants; since the relation of master and servant had ceased.

[1]Reported in 138 Pac. 325.

APPEAL—HARMLESS ERROR—EVIDENCE. In an action by a railroad employee, riding home on the engine after hours, and injured through the negligence of the engineer, the admission in evidence of a rule of the company as to the engineer's duty toward employees on or working about trains, is not prejudicially erroneous, where the jury were fully instructed that the defendant owed no duty to transport the plaintiff, and if he was riding by consent or invitation, the defendant would not be liable unless the defendant was guilty of some positive act of negligence causing the injury.

DAMAGES—PERSONAL INJURIES—EXCESSIVE VERDICT. A verdict for $4,000 for personal injuries sustained by a laborer in a gravel pit, it not excessive, where his wrist was broken, resulting in a permanent limitation of motion amounting to about 30 per cent, and prevented the doing of heavy work.

Appeal from a judgment of the superior court for Lewis county, Wright, J., entered March 28, 1913, upon the verdict of a jury rendered in favor of the plaintiff, in an action by a railroad employee for personal injuries sustained in alighting from a locomotive. Affirmed.

*Geo. T. Reid, J. W. Quick,* and *L. B. da Ponte,* for appellant.

*Govnor Teats, Leo Teats,* and *Ralph Teats,* for respondent.

ELLIS, J.—Action to recover damages for personal injuries. The complaint alleges, in substance, that the defendant is and was, at all times mentioned, a corporation organized under the laws of the state of Wisconsin, owning and operating a transcontinental railway through the county of Lewis, with a junction point at Centralia; that

"On May 25th, 1912, and for a long time prior thereto, the said defendant operated a work train hauling gravel and material in the construction and repair of that part of its trans-continental system located at Centralia. That the said work train was under the care and charge of a conductor and upon which work train many men were employed in the work of constructing and repairing said defendant's tracks and yards used by said defendant in its interstate commerce at Centralia."

It is further alleged that the defendant obtained gravel and dirt used in the construction and repair of its tracks and yards from a gravel pit north of Centralia; that the employees working in the gravel pit and on the work train who lived in Centralia usually rode out to the pit in the morning and back in the evening on the locomotive; that, on the evening of May 25, while the plaintiff and other workmen were returning from the gravel pit, so riding, the locomotive was slowed down at a point in the city of Centralia about half a mile north of the depot for the purpose of allowing them to get off and go to their homes nearby, and that, just as the plaintiff was about to step off, the engineer started the engine forward with a jerk which threw the plaintiff off, causing him to fall upon his arm, breaking one of the bones in the wrist, and inflicting permanent injury.

As grounds of negligence, it is alleged that the defendant carelessly and negligently failed to provide a proper conveyance; that plaintiff was compelled to ride upon the pilot of the engine; and that, after the engine had slowed down for the purpose of permitting him to alight therefrom, the engineer negligently started the engine forward with a jerk, before the plaintiff had time to alight, with such force as to throw the plaintiff out of his balance, causing him to plunge forward, off of the engine, striking upon his left arm, breaking it at the wrist.

The answer denied the allegations of negligence, denied that the plaintiff's work had any connection with interstate commerce, denied the nature and extent of the injuries, and pleaded, as affirmative defenses, contributory negligence, assumption of risk, and injury by negligence of a fellow servant. The reply traversed these affirmative matters.

The evidence showed that the plaintiff began work for the defendant in January, 1912; that he first worked in clearing ground for a new roundhouse in Centralia, and assisted in plowing the ground and afterwards worked as cable man on the work train hauling gravel from the gravel pit about a

mile and a half north of Centralia to the yards at Centralia, where it was unloaded. The cars were unloaded by means of a plow or scraper, drawn forward by a cable passing around a drum and operated by a Ledgerwood engine, thus shoving the gravel off through the side doors of the cars. The plaintiff's duties as cable man were to open the doors and attach the cable to the plow. The plaintiff and nearly all of the men working on the gravel train and in the pit lived in Centralia, he and some of the others about half a mile north of the depot, and between the depot and the gravel pit. When plaintiff first began work as cable man, the cars were left at the pit at night and the engine, with the caboose attached, was brought in and left at the depot, and taken back again the following morning. The men would ride back and forth in the caboose. After a time, the use of the caboose, for some unexplained reason, was discontinued, and those of the men who so desired were permitted to ride back and forth on the engine. The men who worked overtime or who failed to get on the engine would walk to their homes. There was no evidence of any contract or agreement on the defendant's part to carry any of the men from their homes to the pit, or from the pit to their homes. The most that the evidence showed in this particular was a permission to those who could be so accommodated to ride to and from their work on the engine.

The accident happened about fifteen or twenty minutes after six o'clock, and after the men had completed their day's work and were returning home on the engine. The evidence showed that, in the mornings, a few minutes before seven o'clock, when the engine was going out to the pit, it would slow down and sometimes stop about half a mile north of the depot to allow the plaintiff and other men living in that vicinity to get on; and in the evening, when returning, the engine would slow down and sometimes stop at this same place so that the plaintiff and the others who lived near could get off; that when six o'clock, the quitting time, came, the

men at the pit who were ready to come in would get on the engine any place they could and those who were not ready would walk in; that, on the evening of the accident, the engine backed into Centralia from the pit; that the plaintiff stood upon a board which was extended across the front of the engine, above the pilot, a number of other men standing on the pilot; that all remained in this position until the engine slowed down at the place where the plaintiff and some of the others were to get off; that he stepped down onto the pilot, and was in the act of stepping off when the fireman, who had just stepped off, said to the engineer, "Let her go," and, as the plaintiff testified: "I was just in the act of getting off, when they jerked the engine right square from under me, right square from under my feet, throwing me out and in falling I broke my arm." And again: "It seemed as though they threw the thing wide open and jerked the thing right square from under me, that is the way it appeared to me." All of the evidence fairly sustained this version of the occurrence. As to what was being done with the gravel, there was no evidence further than that it was used for making a fill at Centralia. There was no evidence that the men at the gravel pit were employed in any matter connected with interstate commerce, or that the fill for which the gravel was used was in aid of the defendant's interstate business. The plaintiff, over objection, was permitted to introduce in evidence defendant's rule No. 171 as to the duties of work train conductors, as follows:

"171.   Look after safety of employees engaged with train; examine grain doors and fastenings attached to cars, and see that they are in such condition that employes while working on or about the train are not exposed to risk or injury; report respecting work on which engaged to the officer in charge of such work, and telegraph the superintendent at the close of each days work report of work done, causes of delays, work to be done the following day, and working limits required."

At the close of the plaintiff's evidence, the defendant moved for a nonsuit on the ground of insufficiency of evidence, and that the evidence affirmatively showed that the plaintiff, at the time of the injury, was not under, or acting within the provisions of the employer's liability act. The motion was denied. The defendant introduced no evidence, but then moved for a directed verdict. After argument, the court said:

"I am of the opinion that the evidence is not sufficient to warrant a recovery under the Federal employers' liability act. The plaintiff at the time of his injury was not engaged in any act of interstate commerce. I will take the matter under advisement until morning."

The following morning, the court overruled the motion for a directed verdict, and instructed the jury on the theory that the relation of master and servant did not exist at the time of the accident, but that, if the plaintiff was riding upon the engine by invitation or direction, or with the consent of those in charge of the train, or in pursuance of a custom acquiesced in by the defendant, or if those in charge of the train knew of his presence on the engine, he would be a licensee, and that defendant owed him the duty of reasonable care, though not the high degree of care due to a passenger for hire. The cause was submitted to the jury upon these instructions, so far as the record shows, without argument of counsel. The jury returned a verdict for the plaintiff for $4,000. The defendant moved for judgment notwithstanding the verdict, and, in the alternative, for a new trial. Both of these motions were overruled. Judgment was entered and defendant appealed, assigning as error the overruling of the motions for an instructed verdict, for judgment notwithstanding the verdict, and for a new trial, the admission in evidence of rule No. 171, the giving of certain instructions by the court, and the refusal to give a requested instruction.

On these assignments, the appellant bases four contentions: (1) that the respondent, having brought his action

by a complaint containing allegations appropriate to an action under the Federal employers' liability act, could not recover upon evidence showing a liability, if any, as at common law; (2) that, in any event, the defense of negligence of a fellow servant was improperly eliminated by the court's instructions; (3) that the admission in evidence of rule No. 171 was fatal error; (4) that a new trial should have been granted because of excessive verdict.

I. It is manifest that, if an action as at common law was properly presented by the pleadings, it was sustained by sufficient evidence to go to the jury, both on the question of the appellant's negligence and that of the contributory negligence of the respondent. This can hardly be seriously questioned under the evidence, the full purport of which we have set out in our statement of the case. The appellant's chief contention is that the case was not one properly triable as at common law, the argument being that the respondent, having brought his action alleging that the appellant is a transcontinental railroad, and that the work in which the respondent was engaged was the repair of a part of the appellant's transcontinental system, used in interstate commerce, evinced an intention to bring the action under the Federal act and that, when the evidence failed to sustain a cause of action under that act, the action should have been dismissed; that, in an action brought under the Federal statute, by an injured employee engaged in interstate commerce, the statute limits the character of the defense that can be made by the carrier, prohibits the removal of the cause to the Federal court, and provides a period of limitation beyond which such action cannot be brought, in all of which it differs from the state or common law; that, by treating the complaint as one at common law, the court circumvented the law permitting a nonresident defendant the right of removal to the Federal court, since, in any case, a plaintiff might falsely allege that the carrier was engaged in interstate commerce, and that the employee, when injured, was

employed in such commerce, and thereby prevent a removal, while proving a cause of action based solely upon the common law.

The argument further seems to assume that the complaint, eliminating all reference to interstate commerce, did not state a cause of action as at common law. A reading of the complaint convinces us that this position is untenable. Moreover, the appellant construed the complaint as one at common law, as is evidenced by its answer, which pleads every defense available at common law, and some defenses not available under the Federal statute. If the appellant had desired to remove this cause to the Federal court, the same construction which it put upon the complaint by its answer would have enabled it to procure such a removal. If the appellant had desired a removal, it would have been an easy matter to compel the respondent to elect whether he would prosecute his action as one at common law or one under the Federal act. Such an election would, of course, have been binding as fixing the law of the case. There may be doubt as to the sufficiency of the complaint to state a cause of action under the Federal liability act. We have no doubt of its sufficiency under the common law. In view of the state of the pleadings and the construction put upon the complaint by the appellant's answer, and in view of the evidence sustaining the complaint so construed, we would deem it hardly necessary, but for the fact that the question is a new one in this state, to discuss the authorities cited by appellant as sustaining the claim that there was such a departure in the cause of action submitted to the jury from the cause of action pleaded as to entitle the appellant to a reversal.

There is no decision, so far as we are advised, which holds that, where a complaint states facts sufficient to show a liability at common law, proof admissible thereunder should be excluded on the ground of variance merely because the complaint also alleges that the railroad company was engaged in interstate commerce, and that the injured person was, at

the time of the injury, engaged in work in aid of such commerce. In *Kelly's Adm'x v. Chesapeake & O. R. Co.*, 201 Fed. 602, the action was against a railroad company and a person alleged to be its master mechanic, declaring against the former under the employers' liability act, and against the latter under the Kentucky statutes for wrongful death. The action was brought in the state court and removed to the Federal court. The opinion was upon a motion to remand, and, of course, was based upon the pleadings, not upon evidence. The court held that, if the action had been based solely upon the employers' liability act, it would not have been removable. It also held that, under the pleadings, the action as against the alleged master mechanic was not genuine, but fraudulent, and that the case was therefore the same as if no cause of action had been alleged against him, but an action solely against the corporate defendant. The cause was therefore not removable and was remanded. No claim was either made or passed upon that the complaint stated any cause of action as to either defendant at common law. The case has no application to the complaint before us.

In *St. Louis, San Francisco & T. R. Co. v. Seale*, 229 U. S. 156, the action was brought by the widow and parents of the decedent, under the Texas statute for wrongful death. The case pleaded did not state a cause of action under the Federal act because two of the plaintiffs, the mother and father, were not beneficiaries under the act, which is required to be brought through the decedent's personal representative. The complaint stated a cause of action only under the state statute. The facts proved showed that the deceased was employed in interstate commerce, and that the liability, if any, was under the Federal employers' liability act. The court, holding that the Federal act, where applicable to the facts proved, superseded the state statute, and pointing out that "the cause of action sought to be en-

forced was not recognized at common law," used the following language:

"When the evidence was adduced it developed that the real case was not controlled by the state statute but by the Federal statute. In short, the case pleaded was not proved and the case proved was not pleaded. In that situation the defendant interposed the objection, grounded on the Federal statute, that the plaintiffs were not entitled to recover on the case proved."

There was a clear departure in the facts proved from the facts pleaded, and, as said in some of the cases, "a departure from law to law." The cause was remanded without prejudice to the representatives of the deceased to proceed under the Federal act. Obviously, the decision has no application either to the pleadings or to the facts here. In this case, sufficient facts were pleaded to state a cause of action at common law. The evidence developed a case at common law, but none under the Federal act. Viewing the action as one at common law, there was no departure from the facts pleaded in the facts proved, hence no departure from law to law.

In *St. Louis, Iron Mountain & Southern R. Co. v. McWhirter*, 229 U. S. 265, the action, as the court held, was "in express terms exclusively based upon" the Federal hours of service act of 1907, and the Federal employers' liability act of 1908, and "no non-Federal ground was either presented below or passed upon." The supreme court, therefore, of necessity, confined its decision to the questions, all Federal, presented by the record for review. Manifestly, the case has no bearing upon the questions here involved.

In *Union Pac. R. Co. v. Wyler*, 158 U. S. 285, the plaintiff amended his complaint from a statement of general negligence to a statement of negligence under a Kansas statute. This was an unmistakable election to stand or fall by the statute, and made a clear departure from the original common law cause of action. The court held that, by pleading

the law of Kansas, a new cause of action was presented, which did not relate back to the commencement of the action, and gave the defendant the right to plead the statute of limitations as against the new complaint. We are unable to see wherein this decision has any bearing upon the case here presented.

The case of *Kanton v. Kelly*, 65 Wash. 614, 118 Pac. 890, 121 Pac. 833, is also cited by the appellant. In that case, an action for wrongful death was brought under one section of the statute. It was tried as stating a cause of action under that section. We merely held that on appeal the parties would be confined to the case made, both by the pleadings and proof.

On the other hand, the case of *Zachary v. North Carolina R. Co.*, 156 N. C. 496, 72 S. E. 858, seems to us to support the view taken by the trial court in the case before us. In the opinion, it seems to be assumed that the facts pleaded were sufficient to state a cause of action, either under the Federal liability act, or under the state law. The court held that, under the facts proved, the Federal act did not apply, and that the case was properly tried under the state law, for the reason that the deceased, at the time he was killed, was not engaged in any act of any kind of commerce. He was on his way to his boarding house for a purpose personal to himself. The evidence of negligence was held sufficient to take the case to the jury under the state law.

In *Jones v. Chesapeake & O. R. Co.*, 149 Ky. 566, 149 S. W. 951, the complaint, as in the case before us, stated facts sufficient to constitute a cause of action for negligence at common law, and also added the allegations necessary to recovery under the Federal liability act of 1908. The lower court held that the plaintiff, by his evidence, failed to establish a cause of action under the Federal statute, and dismissed the action. On appeal, the supreme court of Kentucky, after holding that the evidence was sufficient to invoke the protection of the Federal statute, in that the plain-

tiff was employed by an interstate carrier in interstate commerce as a track walker, in the care of tracks used in such commerce, said:

"In addition to what we have said, appellant was entitled to have his case submitted to the jury upon the idea that he was entitled to recover at common law if his boss was guilty of gross negligence in having the rail shoved without first receiving notice from appellant that he was ready for it to be shoved. This court has often decided, under such state of facts, that the injured party was entitled to recover. The act referred to did not repeal the common law as applicable to Lewis county, it, at most, only superseded that law; therefore, when appellant brought his action under the Congressional act, and the lower court determined that his evidence did not show him to be entitled to recover under that act, he was then entitled to have his case submitted under the common law."

Obviously, if, as held in the last quoted decision, the Federal act did not repeal, but only superseded the common law in a proper case, then, in a case such as that here presented, where both the complaint and proof showed that the appellant was not, at the time of his injury, engaged in any act connected with interstate commerce, but did state facts sufficient to show a right of recovery under the common law, it would have been positive error not to submit the case to the jury upon that theory.

We are not impressed by the further contention that the fact that the evidence showed, contrary to the allegations of the complaint, that the respondent was, at the time of the injury, not in the employ of the appellant, but a mere licensee, was a fatal variance. The complaint alleged the facts, and the allegation that, at the time, the respondent was in the appellant's service, was a mere mistaken conclusion. The variance between pleading and proof was not such, when all the allegations are considered, as to constitute surprise reasonably entitling the appellant to a new trial, much less to a dismissal.

II.   Nor do we think the court erred in refusing to instruct the jury that the respondent and engineer were fellow servants at the time of the accident, and that, if the respondent was injured through the engineer's negligence, the appellant would not be liable.   The appellant contends that, under the facts of this case, the respondent was still in the employ of the railroad company.   It is obvious that if he was not, he could not have been a fellow servant of the engineer, who was in such employ.   The case seems to us to fall squarely within the rule announced in *Peterson v. Seattle Traction Co.*, 23 Wash. 615, 63 Pac. 539, 65 Pac. 543, 53 L. R. A. 586, where this court said:

"We think that when the respondent had ceased his day's work at track laying, he was not in the employ or under the control of the appellant until he again resumed track laying under the superintendency of Linder, the foreman of the track gang.   Linder certainly had no control over the respondent while going to and from his work, and the respondent was not under any obligation to go to and from his work of track laying on the cars of the appellant.   At six o'clock his day's work ended.   He had no rights and no privileges on that car, other than or different from those of any other passenger.   He was not required to perform services on the car.   He was under the control of the conductor of the car and not of his own foreman, just as any other passenger on the car."

The evidence here shows that the respondent's day's work ended when he ceased his labors at the pit at six o'clock. After that he was at liberty to proceed to his home in any manner he saw fit.   He was no longer under the control or direction of the appellant or any of its employees or agents. The mere fact that he was permitted, if he so desired, to ride upon the engine to a place near his home did not prolong his hours of service or make him a fellow servant of the engineer. *Moronen v. McDonnell* (Mich.), 143 N. W. 8; *Dickinson v. West End St. R. Co.*, 177 Mass. 365, 59 N. E. 60, 83 Am. St. 284, 52 L. R. A. 326; *Fletcher v. Baltimore & P. R. Co.*,

168 U. S. 135; *Stone-Webster Engineering Corporation v. Collins*, 199 Fed. 581.

The case of *Dishon v. Cincinnati, N. O. & T. P. R. Co.*, 126 Fed. 194, chiefly relied upon by the appellant, is based upon the broad principle that the assumption of risk of negligence of a fellow servant is as broad as the scope of action on the servant's part required or authorized by his contract of service, and on the assumed fact that the servant injured while passing between cars in a passage left open for the purpose was doing a thing contemplated as a right, not a mere license, by his contract of employment. He was using the mode of ingress and egress provided by the company for the use of the employees in connection with the section house. In the case before us, the evidence shows that the respondent had no right, under his contract, to ride upon the engine. Every particle of evidence touching the subject points to the conclusion that his work for the day and his contractual right to be upon the appellant's premises ceased with his day's work at the pit. After that, he was there by sufferance, and was merely permitted to ride home upon the engine. While there are many authorities which use language broad enough to sustain the appellant's contention, we believe that, so far as the decisions are reducible to any logical, coherent, harmonizing principle, it is that laid down in the *Dishon* case, which we think inapplicable here. *Louisville & N. R. Co. v. Stuber*, 108 Fed. 934; *Olsen v. Andrews*, 168 Mass. 261, 47 N. E. 90; *Boldt v. New York Cent. R. Co.*, 18 N. Y. 432; *Ewald v. Chicago & N. W. R. Co.*, 70 Wis. 420, 36 N. W. 12, 591, 5 Am. St. 178; *Lamphere v. Oregon R. & Nav. Co.*, 196 Fed. 336. Upon the principle announced in that case, that the scope of respondent's action required by his contract of service determines the continuance or non-continuance of the relation of master and servant after working hours, we hold that the relation in the case before us ceased when the respondent had finished his day's work.

The case of *Horton v. Oregon-Washington R. & Nav. Co.*,

72 Wash. 503, 130 Pac. 897, has no application. We there said:

"The deceased was going to the pumping station by the means supplied by the master. He was performing a necessary part of his employment in the manner contemplated by the master."

That case falls within the rule announced in the *Dishon* case, but is wide of the case here presented.

III. The admission in evidence of appellant's rule No. 171, prescribing the duties of work train conductors as to safety of employees on such trains was, of course, improper, but it does not follow that its admission was prejudicial. The court instructed the jury to the effect that, by the respondent's own evidence, the appellant owed him no duty to transport him from his work to his home in Centralia, or to provide him with a caboose or other conveyance upon which to ride; that, if the jury found that he was riding on the pilot or cow-catcher of the engine, and did so by the consent or invitation of the appellant, he was, at best, but a licensee and assumed all the risks incident to riding thereon, and that the respondent could only be held liable for his injury in case the jury further found that those in charge of the train were guilty of some positive act of negligence causing the injury. Other instructions were given limiting the right of recovery to a finding of positive negligence in the operation of the engine, causing the injury. It is obvious that, under these instructions, the admission of the rule in evidence could not have been prejudicial. The things therein stated were clearly eliminated by these instructions from the consideration of the jury.

IV. Finally, it is contended that a new trial should have been granted because of excessive verdict. The evidence shows that the large bone of plaintiff's wrist was broken; that at the time of the trial, there was a marked limitation of motion, amounting, in the up and down motion, to about twenty-five per cent short of normal, and, in the rotary mo-

tion, to about thirty per cent from normal. The only medical testimony offered was to the effect that the injury was probably permanent, and there was little prospect that the then condition of the wrist would improve. The plaintiff testified that, because of his injury, he was out of work for four months; that he is unable to do heavy work; that he has suffered a great deal, and that when the weather is cold, his arm aches continually. While the verdict seems to us a large one, we cannot say, from the evidence, that it is so large as to indicate that the jury were controlled by passion or prejudice. In the recent case of *Freebury v. Chicago, Milwaukee & P. S. R. Co.,* 77 Wash. 464, 137 Pac. 1044, we said:

"Where the evidence as to the extent of the injuries is conflicting, and there is substantial testimony which sustains the amount of the verdict, the finding of the jury must control. If the verdict is not sustained by substantial evidence, then a reduction of the amount thereof will be ordered or a new trial granted."

Under the rule there announced, we would not be warranted in reversing the judgment or in reducing the amount of recovery.

The judgment is affirmed.

CROW, C. J., GOSE, CHADWICK, and MAIN, JJ., concur.