[No. 15256.    Department One.    August 6, 1919.]

M. D. ARCHIBALD, *Appellant,* v. NORTHERN PACIFIC
RAILROAD COMPANY, *Respondent.*[1]

MASTER AND SERVANT (129) — INJURY TO EMPLOYEE — ACTIONS —
PLEADING—ISSUES, PROOF AND VARIANCE. The state law and the Fed-
eral employers' liability act having established the same rules in
actions against carriers engaged in both interstate and intrastate
commerce, it is not a fatal variance, warranting a dismissal of the
action, that the complaint, broad enough to cover both laws, pleads
a cause of action under the Federal act (U. S. Comp. St. 1916,
§§ 8657-8665), while the proof failed to bring plaintiff within the
provisions of that act but did establish that he was an employee
entitled to protection by the state law, Laws 1917, p. 96, § 19.

SAME (161)—ASSUMPTION OF RISKS—FELLOW SERVANTS—QUESTION
FOR JURY. Plaintiff, a machinist's helper, instructed to protect his
eyes from flying pieces of steel, does not, as a matter of law, assume
the risk of negligence of the machinist in continuing the dangerous
work while plaintiff, pursuant to instructions, was changing his
position and had not reached a place of safety.

STATUTES (18)—SUBJECT AND TITLE—CARRIERS—WORKMEN'S COM-
PENSATION ACT. Section 19 of Laws of 1917, p. 96, excluding em-
ployees of carriers engaged in interstate and intrastate commerce
from the operation of the industrial insurance act, is germane to
and sufficiently included in the title, "Relating to the compensation
of injured workmen," since the title need not be an index to the body
of the act or express all details of the subject dealt with.

CONSTITUTIONAL LAW (103)—EQUAL PROTECTION OF LAWS—WORK-
MEN'S COMPENSATION ACT. Laws of 1917, p. 96, § 19, excluding em-
ployees of carriers engaged in interstate and intrastate commerce
from the operation of the industrial insurance act and giving them
the right to institute actions for personal injuries, does not deny the
equal protection of the laws guaranteed by the 14th amendment of
the Federal Constitution; since it was not the object to take from
the states the right to classify the subjects of legislation where the
classification is not arbitrary or unreasonable.

Appeal from a judgment of the superior court for
Spokane county, Carey, J., entered January 16, 1919,

[1]Reported in 183 Pac. 95.

4—108 WASH.

upon granting a nonsuit, dismissing an action for personal injuries sustained by a machinist's helper in shaping a forging. Reversed.

*Plummer & Lavin,* for appellant.
*Cannon & Ferris* and *F. J. McKevitt,* for respondent.

MACKINTOSH, J.—For a period of sixteen months, the appellant had been employed in the repair shop of the respondent as a machinist's helper, and while so employed one afternoon about four o'clock, he was assisting one Johnston, a machinist, in shaping a forging to be fitted upon an engine frame. In order to properly perform this work, Johnston was chiselling the forging, having marked it where it was to be chipped, and having set it in a vise. The tools used were the ordinary cold chisel and hammer. While Johnston was chiselling, the appellant was standing at Johnston's right, holding a torch in his right hand to enable Johnston to see the work he was engaged upon. At the time this particular work had been commenced, Johnston had warned the appellant of the danger to his eyes from flying particles of steel, and had told him to keep his eyes covered with one hand while holding the torch with the other. The appellant had heeded this warning by keeping the gloved left hand over his eyes. When the work had progressed for fifteen or twenty minutes, and had arrived at a point where the forging was to be chipped back, it became necessary for Johnston and the appellant to change places. Johnston ordered the appellant to shift his position so as to pass to Johnston's left side, and while getting into this position, he changed, or was in the act of changing, the torch to his left hand, and Johnston, in the meantime having recommenced his work from his new position, in striking the chisel

caused a flying piece of steel to become lodged in the appellant's eye, this being the injury for which the action was commenced.

The allegations of negligence state that Johnston, without warning to the appellant and while he was changing his position as he had been directed to, and changing the torch as it became necessary by reason of the changed position, carelessly struck the chisel before the appellant had an opportunity to change the torch and thus free his right hand so that it might be used in protecting his eyes. A nonsuit having been granted, appellant is here and presents four questions for decision.

I. The complaint pleads a cause of action under the Federal employers' liability act [U. S. Comp. St. 1916, §§ 8657-8665], and contains no statement under separate and distinct counts under the state law. By the enactment of the legislature of 1917, contained in Laws of 1917, ch. 28, p. 96, § 19, the appellant and respondent have the same rights and are under the same liabilities and are subject to the same rules of evidence and the same defenses whether the action be prosecuted under the Federal employers' liability law or the state law. That is, the state law has established the same rules of evidence and procedure for actions against carriers engaged in both interstate and intrastate commerce as is provided by the Federal employers' liability act in the case of interstate carriers. The complaint in this case made allegations that, at the time of the injury, the respondent was engaged in interstate commerce, but the proof failed to establish this fact, and the appellant now tacitly admits that he did not bring himself within the provisions of the Federal employers' liability act. The respondent's claim is that the appellant, having elected to sue under the Federal act, was not entitled to have his case go to

the jury when he failed to prove that he came within the operation of that act, although the testimony established a cause of action under the state laws. The complaint was drawn broadly enough to entitle the plaintiff to relief under the Federal employers' liability act, and, by its terms, it was drawn under that act, there being no separate cause of action alleged under the state act. There is no question of the respondent having lost any right it may have had to move the case to the Federal court for trial. All the proof introduced was equally material and proper to establish a cause of action under either the Federal or the state law, and under both laws the respondent was entitled to and limited to the same defenses. The appellant failed to satisfactorily prove that he was such employee as was protected by the Federal act, but did establish by his proof that he was such an employee as was protected by the state act. This situation presents squarely for our determination the question of whether such conditions constitute a variance and failure of proof warranting the dismissal of the action.

In *Baird v. Northern Pac. R. Co.*, 78 Wash. 67, 138 Pac. 325, this court had under consideration a question very similar to this. There was a cause of action stated under both the Federal act and common law, and the parties had treated it, however, as a common law action, and while different issues and defenses were possible under the Federal act and at common law, yet the court said:

"There is no decision, so far as we are advised, which holds that, where a complaint states facts sufficient to show a liability at common law, proof admissible thereunder should be excluded on the ground of variance merely because the complaint also alleges that the railroad company was engaged in interstate

commerce, and that the injured person was, at the time of the injury, engaged in work in aid of such commerce.''

And further in the same case:

"Obviously, if, as held in the last quoted decision [*Jones v. Chesapeake & O. R. Co.*, 149 Ky. 566, 149 S. W. 951], the Federal act did not repeal, but only superseded the common law in a proper case, then, in a case such as here presented, where both the complaint and proof showed that the appellant was not, at the time of his injury, engaged in any act connected with interstate commerce, but did state facts sufficient to show a right of recovery under the common law, it would have been positive error not to submit the case to the jury upon that theory.''

The reasoning of the *Baird* case applied to the facts of the case at bar must lead to the conclusion that where, under the Federal act and state law, the parties stand in exactly the same relation to each other, and an action between them is subject to the same rules, under a complaint broad enough to cover both laws, the plaintiff is entitled to have his case proceed if there is sufficient proof to entitle him to recovery under either the act or the state law, notwithstanding the fact that his complaint may have indicated that it was based on the Federal act.

*Corbett v. Boston & M. R.*, 219 Mass. 351, 107 N. E. 60, although it relates to two concurrent actions brought under the Federal act and under the Massachusetts act, contains reasoning that is apropos to our discussion.

"It [the Federal act] does not undertake to affect the force of the state statute in its appropriate sphere. The state law is as supreme and exclusive in its application to intrastate commerce as is the Federal law to interstate commerce. If the employee of a railroad engaged in both interstate and intrastate commerce is injured or killed while in the former service, the car-

rier's liability is controlled and must be determined solely by the Federal law; if in the latter service, such liability rests wholly upon the state law. . . .

"The facts and not the pleadings determine whether the wrong done in any given case confers a right to recover under the Federal or under the state statute. The allegations in the plaintiff's declarations in these two actions do not constitute the test whether the jurisdiction of the court is under the Federal or state statute. These simply are the basis for a judicial inquiry into the facts which alone can determine that question. It is a familiar principle that, where inconsistent courses are open to an injured party and it is doubtful which ultimately may lead to full relief, he may follow one even to defeat, and then take another, or he may pursue all concurrently, until it finally is decided which affords the remedy. The assertion of one claim which turns out to be unsound, so long as it goes no further, is simply a mistake. It is not and does not purport to be a final choice, nor an election. A party is not obliged to select his procedure at his peril. . . . This rule has been followed frequently in actions where it was doubtful whether the remedy of the plaintiff was under our employers' liability act or at common law. . . . It is equally applicable to the cases at bar. The principle is not changed in any material respect because the question relates to remedies afforded by the statutes of different sovereign powers, each exclusive within its own domain. The relief is sought in the same forum, for the state court has jurisdiction of the cause of action, whichever statute may be controlling. . . .

"There are strong practical considerations in the administration of justice which lead to the same result. It oftentimes would be a great hardship upon the parties to compel them to try out first the question whether the Federal act applies, and, if it in the end shall be decided that it does not, then to test by further litigation their rights under the state statute. The short period of limitations provided in each act often might expire before a final decision could be reached. If adverse to the plaintiff on the ground of

error in the form of relief sought, he thus might be barred from a just recovery. Although both the Federal and state statutes as to amendments are liberal, . . . and are liberally interpreted in cases of this sort, . . . nevertheless, the allowance of such amendments rests commonly in the sound discretion of the trial judge and is not subject to revision on exceptions. As it is not a matter of right, substantial interests might be lost through no fault of a plaintiff who constantly had been alert in his own behalf.

"The Federal act has been construed as covering injuries occurring at the moment when the particular service performed is a part of interstate commerce. . . . Whether a railroad employee is engaged in interstate or intrastate commerce often involves legal discrimination of great nicety about which even the justices of the highest court are not in harmony. . . . It would be a saving of expense both to the parties and to the commonwealth if the two actions could be prosecuted together, so that by one trial the facts could be ascertained and the causes ended by the determination of the governing principles of law. Where the settlement of an issue of fact depends upon conflicting evidence, it seems more likely that the truth will be ascertained by adducing all the evidence at one time before a single tribunal and enabling it to find out the real situation under an adequate statement of the governing rules of law applicable to all phases, than to require two distinct and successive inquiries before separate tribunals where only a single aspect of the incident could be open to investigation at one time."

If the court in that case was justified in concluding that two independent actions could properly be presented as one, then, in this case, we may hold that, in one action, the entire question may be tried out and the case submitted to the jury's consideration as being under the act which the proof shows is applicable to the situation.

*Bravis v. Chicago, M. & St. P. R. Co.*, 217 Fed. 234, cited by the respondent, holds:

"It is said that the complaint, after its amendment, stated a good cause of action under the state laws and also under the Federal employers' liability act, and it is insisted in view of that fact that the court erred in directing the verdict. This case does not present a complaint where, in separate counts, a cause of action is pleaded under the Federal act and another under the state law, and no election is made, and we do not determine the effect of a motion for a directed verdict in such a case. It presents a case where the plaintiff at the close of his own case so amended his complaint, which stated in a single count a cause of action under the state law, as to make it state a cause of action under the Federal employers' liability act. The plaintiff thereby elected to abandon his cause of action under the state law and to insist upon a recovery under the Federal act. The defendant then moved for a directed verdict, and the court could not lawfully escape the decision of the only question thus presented, the question whether or not the evidence sustained the cause of action which alone the plaintiff had then pleaded and on which he had elected to rely. There was no error in its decision of that issue and the plaintiff was estopped from repudiating his election."

This case differs from the case at bar in that the plaintiff, at the conclusion of his case, sought to amend his complaint so as to state a cause of action under the Federal act which was not sustained by his proof, and which amounted to an abandonment of the cause of action originally stated under the state law. Had the appellant in this case insisted that, at the time of the injury, he was engaged in interstate commerce and relied for his recovery upon the evidence introduced to establish that fact, which evidence was not sufficient, the *Bravis* case and the case at bar would be analogous.

Respondent has also cited the case of *Louisville &*

*N. R. Co. v. Strange's Adm'x,* 156 Ky. 439, 161 S. W. 239, which contains a statement in support of the rule in the *Baird* case:

"Where the parties themselves and the rights and liabilities of the parties are precisely the same under both the State law and the Federal statute, there would doubtless be no good reason for requiring an election."

II. It is also urged that the evidence was not sufficient to allow the case to go to the jury, irrespective of the law applicable, for the reason that the plaintiff's testimony established his assumption of risk. It is argued that the work being done was of a simple character and the dangers incident to it were so open and apparent that the appellant must, as a matter of law, be held to have assumed the risk of injury as a part of this employment.

It may be true that the appellant should be held, as a person of ordinary intelligence and experience, to have appreciated the danger, but the negligence complained of was the negligence of Johnston, and the appellant is not, as a matter of law, to be held to have assumed the risk of Johnston's negligence. The testimony shows that the appellant was following Johnston's instructions in changing his position, and that, before he had an adequate opportunity to change that position and protect himself in the new position, Johnston, without warning, resumed the dangerous work. This presented a question of fact upon which the jury should have been allowed to pass, and this is true although the facts as testified to might have been materially different from those contained in the statement made by the appellant to the claim agent of the respondent soon after the injury. This presented a question of credibility, within the province of the jury to decide.

*Reid v. Dickinson,* 169 N. W. (Iowa) 673, was a case in its facts closely akin to this. The Iowa court, in reversing a directed verdict, said:

"It is apparent that plaintiff was injured while in the line of his employment, and while engaged in the very act which he was directed by defendant's foreman to do. Taking this record as it is before us, the jury might well find that the plaintiff had done the work assigned him in the usual and ordinary way. He had succeeded in loosening his end of the rail, and, while standing with his bar in the bolt hole waiting the action of his coemployee at the other end of the rail, the rail was suddenly turned with plaintiff's bar in the bolt hole, and the position of the bar changed by the act of turning. This threw it out of the position, and injury resulted to the plaintiff. Plaintiff was waiting for the employee at the other end to signal him that he had secured a bar hold on the rail sufficiently strong to enable him to turn the rail free from its position and loosen it from the pile. The record shows that his coemployee, without giving the warning which the plaintiff had reason to expect, and which the employee was directed to give, and upon which plaintiff relied, suddenly jerked the rail loose, causing plaintiff's bar to strike him upon the head.

"The jury could well have found that the cause of the injury was the sudden and unexpected movement of the plaintiff's assistant in suddenly jerking the rail loose without warning plaintiff that he was about to do so, and without warning plaintiff that the rail was in a position to be jerked at that end. It was said in *Caverhill v. Boston & M. Ry. Co.,* reported in 77 N. H. 330, 91 Atl. 917, that, whatever risks the deceased assumed as to the defendant's method of doing business, he did not assume the risk of injury from the negligence of another servant. For an injury so caused the statute expressly makes the employer liable.

"It was said by this court in *Byram v. Illinois Cent. R. Co.,* 172 Iowa 631, 154 N. W. 1006. Ann. Cas. 1918A, 1067: 'It is clear that the plaintiff did not assume the risk arising out of the negligence of another employee; for this he could not anticipate or guard against.'"

In *Cules v. Northern Pac. R. Co.*, 105 Wash. 281, 177 Pac. 830, occurs this statement:

"When, therefore, the men agreed upon a line of action and proceeded with the work in pursuance of the agreement, any departure therefrom by any number of the workmen would be a negligent act, whether wilfully or heedlessly performed, giving a workman injured thereby a right of action against them to recover for such injury; this on the principle that they failed to exercise that degree of care which ordinary prudence required of them under the given circumstances."

So here, when Johnston directed the appellant to change his position and resumed the dangerous acts before the appellant had placed himself in a position of safety, a question of fact was presented to the jury as to whether this was negligence upon Johnston's part.

III. Chapter 28, § 19, p. 96, Laws of 1917, which provides for a cause of action against carriers engaged in interstate and intrastate commerce in all cases where liability does not exist under the Federal act, is a portion of a general act relating to the compensation of injured workmen and amending certain designated sections in the prior act on that subject. It is claimed by respondent that this section 19 is invalid for the reason that it relates to a subject not embraced in nor germane to that expressed in the title of the act, and is therefore in violation of section 19 of art. 2, of the state constitution.

"No bill shall embrace more than one subject, and that shall be expressed in the title."

"As the Constitution has not indicated the degree of particularity necessary to express in its title the subject of an act, the courts should not embarrass legislation by technical interpretations based upon mere form of phraseology. The objections should be

grave, and the conflict between the statute and the constitution palpable, before the judiciary should disregard a legislative enactment upon the sole ground that the double subject was not fully expressed in the title." *Seymour v. Tacoma,* 6 Wash. 138, 32 Pac. 1077.

"No elaborate statement of the subject of an act is necessary to meet the spirit of the constitution. A few well-chosen words, suggestive of the general subject treated, is all that is required." *State ex rel. Seattle Electric Co. v. Superior Court,* 28 Wash. 317, 68 Pac. 957, 92 Am. St. 831.

"A title may be as broad as the legislature sees fit to make it, and thereunder any specific legislation, as to any subject relating to the general matter thus broadly embraced in the title, sustained." *Percival v. Cowychee & Wide Hollow Irr. Dist.,* 15 Wash. 480, 46 Pac. 1035.

In *Thayer v. Snohomish Logging Co.,* 101 Wash. 458, 172 Pac. 552, there being a restrictive title, this court held:

"The language of an act should be construed in view of its title and lawful purposes, since the subject expressed in the title fixes a limit upon the scope of the act."

"The title of the act need not be an index to the body thereof nor need it express in detail every phase of the subject which is dealt with by the act. The essential requirement is notice; and the title is sufficient if it give reasonable notice of the subject legislated upon." *Davis-Kaser Co. v. Colonial Fire Underwriters Ins. Co.,* 91 Wash. 383, 157 Pac. 870.

"This provision of the organic act above referred to was not intended to require details and particulars to be stated in the title of acts." *State ex rel. Great Northern R. Co. v. Superior Court,* 68 Wash. 572, 123 Pac. 996, 40 L. R. A. (N. S.) 793.

"It is sufficient if it indicates to an inquiring mind the scope and purpose of the law. The title may be general and will include all matters incidental and

germane thereto." *State v. Asotin County,* 79 Wash. 634, 140 Pac. 914.

"The mention of a given subject in the title is notice of all things germane to that subject found in the act." *Cawsey v. Brickey,* 82 Wash. 653, 144 Pac. 938.

This, being an act relating to the compensation of injured workmen, is comprehensive enough to include all manner of compensation for such workmen and all the means by which such compensation may be obtained. The title does not indicate that the only compensation provided for is that which is obtained through industrial insurance, although we popularly speak of the act as an industrial insurance act. The act provides for compensation by industrial insurance in certain cases, and also provides for the obtaining of compensation by injured workmen from their employers by legal action, and in the section to which we are now confining our attention, provides, among other things, the defenses available to such employers. Compensation being the purpose and general scope of the act, section 19 is certainly germane thereto.

The title to the original act "Relating to the Compensation of Injured Workmen" contained the additional phrase: "Abolishing the doctrine of negligence as a ground of recovery against employers." This court, in referring to the title, said in *Peet v. Mills,* 76 Wash. 437, 136 Pac. 685, Ann. Cas. 1915D 154, L. R. A. 1916A 358:

"The first clause of the title indicates that it is an act relating to the compensation of injured workmen in any industry in the state, and the employment of the language, further on in the title, 'abolishing the doctrine of negligence as a ground for recovery of damages against employers,' is indicative of the evil the act seeks to overcome rather than the new remedy created. The title is plainly broad enough to indicate that the act is intended to furnish the only compensa-

tion to be allowed workmen subsequent to its becoming law, and as such clearly includes any and all rights of action theretofore existing in which such compensation might have been obtained.''

IV.  The fourth point raised is that the section in question violates § 1 of the 14th Amendment of the Federal constitution, in that it denies the equal protection of the laws to a given class of employees.

The determination of whether legislative acts ''deny to any person within its jurisdiction the equal protection of the laws'' is fraught with considerable difficulty.  From the nature of the case, it is impossible to formulate a general definition which will meet the individual situation as it arises.  The supreme court of the United States, in *Davidson v. New Orleans,* 96 U. S. 97, encountering this difficulty, says:

''But, apart from the imminent risk of a failure to give any definition which would be at once perspicuous, comprehensive, and satisfactory, there is wisdom, we think, in the ascertaining of the intent and application of such an important phrase in the Federal Constitution, by the gradual process of judicial inclusion and exclusion, as the cases presented for decision shall require, with the reasoning on which such decisions may be founded.''

Commenting upon this quotation, Hannis Taylor, in his work on ''Due Process of Law,'' page 49, § 20, remarks:

''In a word, the rule is that when a citizen of the United States, as such, complains that a fundamental right guaranteed by the clauses in question has been taken away, the court will ascertain in that particular case whether the right is an incident of national citizenship, and as such within its protection, or an incident of state citizenship, whose protection belongs to the state alone.  If it appears that the right claimed is an incident of national citizenship, then the ultimate question arising is, whether or no that right as pro-

tected by the amendment has been actually taken away by state action, executive, legislative or judicial. The natural and inevitable tendency always impelling the court to narrow rather than extend its jurisdiction arises out of the principle of self-preservation. After stating that so long as the due process of law clause was only a part of the Fifth Amendment it 'has rarely been invoked in the judicial forum, or the more enlarged theatre of public discussion,' attention was called to the fact, as early as 1878, that 'while it has been a part of the Constitution, as a restraint upon the power of the states, only a few years, the docket of this court is crowded with cases in which we are asked to hold that state courts and state legislatures have deprived their citizens of life, liberty, or property, without due process of law.' . . . For the last thirty-six years the court has been applying its rule of inclusion and exclusion to the ever rising tide of cases before it, and the result is a body of unique and profoundly important judicial literature which the author is now striving to condense and arrange in a more complete and systematic form than it has ever assumed before. This body of literature is unique because it embodies the result of an effort upon the part of the only court in the world's history ever endowed with such a power to annul national and state laws whenever they attempt to violate the rights of the national citizen as guaranteed by the national constitution.''

The respondent, in support of his argument that section 19 is class legislation, insists that the right to institute an action for personal injuries is given to persons engaged ''in the maintenance and operation of railroads doing interstate, foreign and intrastate commerce, and in the maintenance and construction of their equipment,'' and provides that such railroads shall, in actions against them, have available only such defenses as are available to interstate railroads or railroads engaged in interstate business under the Federal employers' liability act, and that constitutes a discrimination between the rights possessed by employees of

railroads, such as logging, interurban, street, etc., for the reason that workmen engaged upon railroads doing purely an intrastate business are subject to the same hazards as those workmen engaged in similar occupations upon railroads within the act. In other words, that an arbitrary classification exists, while there is no substantial distinction between the classes of workmen.

"The equal protection of the laws means the protection of equal laws, but this equality of protection is not violated by classification provided equal protection is afforded the members of each class. The power of the state to classify the objects of legislation is very broad. It is a matter of legislative discretion, and such classification will be upheld if it bears a reasonable relation to a proper object sought to be accomplished, even if it may appear unwise or unjust. The courts will not interfere with such classification unless the distinctions made are clearly arbitrary." Taylor, Due Process of Law, page 725, § 458.

The supreme court of the United States had before it the employers' liability law of Indiana in *Louisville & N. R. Co. v. Melton,* 218 U. S. 36, 47 L. R. A. (N. S.) 84:

"It is beyond doubt foreclosed that the Indiana statute does not offend against the equal protection clause of the Fourteenth Amendment, because it subjects railroad employes to a different rule as to the doctrine of fellow-servant from that which prevails as to other employments in that state. . . . But while conceding this the argument is that classification of railroad employes for the purpose of the doctrine of fellow-servant can only consistently with equality and uniformity embrace such employes when exposed to dangers peculiarly resulting from the operation of a railroad, thus affording ground for distinguishing them for the purpose of classification from co-employes not subject to like hazards or employes engaged in other occupations. The argument is thus

stated: 'Plaintiff in error does not question the right of the legislature of Indiana to classify railroads in order to impose liability upon them for injuries to their employes incident to railroad hazards, but it does insist that to make this a constitutional exercise of legislative power the liability of the railroads must be made to depend upon the character of the employment and not upon the character of the employer.' Thus stated, the argument tends to confuse the question for decision, since there is no contention that the statute as construed bases any classification upon some supposed distinction in the person of the employer. The idea evidently intended to be expressed by the argument is, that although, speaking in a general sense, it be true that the hazards arising from the operation of railroads are such that a classification of railroad employes is justified, yet as in operating railroads some employes are subject to risks peculiar to such operation and others to risks which, however serious they may be, are not in the proper sense risks arising from the fact that the employes are engaged in railroad work, the legislative authority in classifying may not confound the two by considering in a generic sense the nature and character of the work performed by railroad employes collectively considered, but must consider and separately provide for the distinctions occasioned by the varying nature and character of the duties which railroad operatives may be called upon to discharge. In other words, reduced to its ultimate analysis the contention comes to this, that by the operation of the equal protection clause of the Fourteenth Amendment the States are prohibited from exerting their legitimate police powers upon grounds of the generic distinction obtaining between persons and things, however apparent such distinction may be, but, on the contrary, must legislate upon the basis of a minute consideration of the distinctions which may arise from accidental circumstances as to the persons and things coming within the general class provided for. When the proposition is thus accurately fixed it necessarily results that in effect it denies the existence of the power to classify, and hence must rest upon the

assumption that the equal protection clause of the Fourteenth Amendment has a scope and effect upon the lawful authority of the States contrary to the doctrine maintained by this court without deviation. This follows since the necessary consequence of the argument is to virtually challenge the legislative power to classify and the numerous decisions upholding that authority. To this destructive end it is apparent the argument must come, since it assumes that however completely a classification may be justified by general considerations, such classification may not be made if inequalities be detected as to some persons embraced within the general class by a critical analysis of the relation of the persons or things otherwise embraced within the general class.''

See, also, *St. Louis Consolidated Coal Co. v. Illinois,* 185 U. S. 203.

*Jeffrey Mfg. Co. v. Blagg,* 235 U. S. 571, contains the statement:

''This court has many times affirmed the general proposition that it is not the purpose of the Fourteenth Amendment in the equal protection clause to take from the States the right and power to classify the subjects of legislation. It is only when such attempted classification is arbitrary and unreasonable that the court can declare it beyond the legislative authority. . . . That a law may work hardship and inequality is not enough. Many valid laws from the generality of their application necessarily do that, and the legislature must be allowed a wide field of choice in determining the subject-matter of its laws, what shall come within them, and what shall be excluded.''

Vol. 6 R. C. L., pages 373 *et seq.,* contains a full discussion of this subject, citing a multitude of authorities supporting the principles here stated.

In the decision of this court in passing upon the constitutionality of the workmen's compensation act, *State ex rel. Davis-Smith Co. v. Clausen,* 65 Wash. 156, 117

Pac. 1101, 37 L. R. A. (N. S.) 466, a related question was considered (at page 197):

"It is said that the act violates the provisions relating to class legislation because it diverts the contributions exacted from the numerous industries to the relief of a particular class of injured and disabled workmen, instead of applying it to the relief of injured workmen generally or applying it to the use of the state at large. But to divert the money collected in this manner to a special use is one of the prerogatives of legislation. The right of the state to regulate any form of industry arises from the fact that its pursuit affects injuriously the health, safety, morals or welfare of the persons engaged in it, or is inimical in some form to some portion of the individuals of the community. It is not necessary that it always affect injuriously the public at large. On the contrary, it may be regulated if it affects injuriously those engaged in it, or those brought in direct contact with it, even though its pursuit may benefit generally the people of the state at large. Nor is there any particular form which the regulation must take. The conduct of the business may be prohibited entirely in a particular place or particular manner; its pursuit may be restricted to certain hours of the day; it may be permitted to be conducted only in case protective devices are used; or it may be permitted in certain forms and a sum of money exacted from the individuals carrying it on for the purpose of recompensing those who suffer losses because thereof.

"So in this instance, if the legislature believed that to permit the pursuit of the industries named after the present manner of conducting them was generally for the public good in spite of the losses the method of pursuit entailed, there is no reason why it should not confine its regulations to compelling the owners and conductors of such industries to create a fund out of which the losses caused thereby should be made good. That legislation in this form is not class legislation, nor a denial to owners of property of the equal protection of the laws, is well sustained by authority."

Based on these authorities, it must follow that section 19 (Laws of 1917, p. 96) does not deny the equal protection of the laws to the class of employees, as argued by respondent.

We reverse the judgment of the lower court and remand the case for a new trial.

HOLCOMB, C. J., TOLMAN, MAIN, and MITCHELL, JJ., concur.