JOHN T. HILDERBRAND, RESPONDENT, v. ST. LOUIS-SAN FRANCISCO RAILWAY COMPANY, A CORPORATION, APPELLANT.*

St. Louis Court of Appeals  Opinion filed November 8, 1927.

1.—Railroads—Negligence—Federal Employers' Liability Act—Assumption of Risk.  In actions arising under the Federal Employers' Liability Act, the doctrine of assumption of risk as declared and applied by the Federal courts applies, namely, that an employee assumes not only the risks ordinarily incident to his employment, but also the risks caused by his master's negligence, which are obvious, or fully known and appreciated by him.

2.—Same—Same—Same—Common-Law Action—Assumption of Risk—Doctrine of State Courts Applicable.  In an action for damages for personal injuries sustained by plaintiff while in the employ of defendant, where the petition stated a cause of action under the common law independent of Federal Employers' Liability Act, and plaintiff recovered only under the prevailing rules of common law, the question whether or not he assumed the risk of his injury would of necessity be determinable under the doctrine as declared by our own State courts.

3.—Same—Same—Employee Injured—Petition—Common-law Action.  In an action by an employee against a railroad company for damages for personal injuries, injured while engaged in defendant's roundhouse as a hostler caused by his falling from the top of a locomotive tank, his petition alleging that defendant owned and operated lines of railroad extending across the State and into other States, and that his injury occurred while employed by it in interstate commerce, although stating a good cause of action under the Federal Employers' Liability Act **held** to afford a basis for recovery under the

common law, after the allegation that the injury had occurred in interstate commerce, not having been sustained by proof, was eliminated.

4.—Same—Same—Same—Same—Evidence—Common-law Liability—Jury Case. In an action for damages for personal injuries by an employee against a railroad company, injured while engaged as a hostler as a result of falling from the top of a locomotive tank, the surface of which was slick and slippery and covered with oil, evidence of defendant's negligence **held** to make out a case entitling plaintiff to go to the jury upon the facts pleaded and proven, based on the common-law liability of defendant.

5.—Same—Interstate Commerce—Federal Employers' Liability Act—Effect on Existing Rules of Law. The Federal Employers' Liability Act does not nullify or repeal, but only supersedes the existing rules of law in a proper case, when it conclusively appears from the facts in evidence that the parties were engaged in interstate commerce.

6.—Instructions—Negligence—Measure of Damages—Instruction Not Erroneous as too General When Construed With Other Instruction Given. In an action for damages for personal injuries by an employee of a railroad company injured while engaged as a hostler, an instruction that the jury should allow plaintiff such damages as they might find he had sustained as a direct result of defendant's negligence **held** not erroneous as too general where, by another instruction given for defendant, negligence was limited to damages caused by slipping upon grease on top of the oil tank of the engine as pleaded in his petition as the cause of his injury.

7.—Same—Considered as a Whole. Instructions are to be read as a whole and as a single charge, in determining whether a particular instruction is erroneous.

8.—Damages—Excessive Damages—Evidence—$7000 Under the Evidence Not Excessive. $7,000 damages awarded to an employee of a railroad company engaged as a hostler and earning $120 per month, for injuries sustained by a fall from the top of a locomotive oil tank, claimed to have caused rheumatism, which was a permanent condition causing pain and suffering, and which incapacitated the plaintiff from performing his previous occupation or from doing any sort of work which required lifting or stooping, **held** under the evidence not excessive.

*Corpus Juris-Cyc. References: Appeal and Error, 4CJ, p. 872, n. 19; Commerce, 12CJ, p. 74, n. 97; Damages, 17CJ, p. 1073, n. 83; p. 1117, n. 17; Master and Servant, 39CJ, p. 265, n. 6; p. 690, n. 81; p. 710, n. 39; p. 734, n. 13; p. 1138, n. 76; Trial, 38Cyc, p. 1778, n. 73.

Appeal from the Circuit Court of St. Louis County.—Hon. G. A. Wurdeman, Judge.

AFFIRMED.

*E. T. Miller, A. P. Stewart* and *A. E. L. Gardner* for appellant.

(1) The demurrer to the evidence should have been sustained, and the peremptory instruction requested by defendant at the close of the whole case should have been given. Plaintiff admitted knowledge of the material conditions, the presence of oil on top of the tank, and hence he assumed the risk, even though such risk may have grown

out of the master's negligence. Pryor v. Williams, 254 U. S. 43; Seaboard Air Line v. Horton, 233 U. S. 492; Boldt v. Railroad, 245 U. S. 441; Jacobs v. Railroad, 241 U. S. 229; Chesapeake, etc., R. Co. v. Proffitt, 241 U. S. 462; Morris v. Pryor, 272 Mo. 350; Louisville, etc., R. Co. v. Wright (Ky.), 185 S. W. 861; Kansas City Southern R. Co. v. Livesay (Ark.), 177 S. W. 875; Schaff v. Hendrich (Tex.), 207 S. W. 543; Davis v. Railway (Ky.), 179 S. W. 422; Barrett v. Railway, 244 Fed. 397; Gulf, etc., R. Co. v. Drennan (Tex.), 204 S. W. 691; Delaware, etc., R. Co. v. Tomasco, 256 Fed. 14.    (2) Plaintiff requested no instruction outlining his theory of the case upon which recovery was sought. This practice has been repeatedly condemned. Eversole v. Railroad, 249 Mo. 523; Powell v. Railroad, 255 Mo. 420; Wingfield v. Railroad, 257 Mo. 347. The only instruction requested by plaintiff was one on the measure of damages, which was given by the court; and that instruction is erroneous in that it authorized the jury, if they found for plaintiff, to allow him damages for physical injuries and injury to his nervous system as they might find he had sustained as a "direct result of defendant's negligence, if any," without limiting the finding of the jury as to negligence to the negligence which was pleaded in the petition and which found support in the evidence. The instruction as given constituted a roving commission to the jury to find defendant guilty of any negligence. Black v. Railway, 217 Mo. 672; Miller v. Railway, 155 Mo. App. 528; Martin v. Railroad, 175 Mo. App. 464.    (3)    The verdict is grossly excessive for the actual injuries sustained. DeCourcy v. Const. Co., 140 Mo. App. 169; Harris v. Railway, 168 Mo. App. 336; Welborn v. Railway, 170 Mo. App. 351; Chambers v. Hines, 208 Mo. App. 222; Lattimore v. Lt. & P. Co., 128 Mo. App. 37; Brown v. St. Joseph, 184 Mo. App. 667; Winkleblack v. Mfg. Co., 187 S. W. 95; Lundahl v. Kansas City, 209 S. W. 564; Findley v. Wells, 260 S. W. 506, 507; Tanner v. Railway, 258 S. W. 730, 731; Lebrecht v. Railways, 237 S. W. 112; James v. Railways, 236 S. W. 1089.

*Ralph & Baxter* for respondent.

(1)    The petition stated a cause of action. Schuh v. Foundry Co., 241 S. W. 641; Stephens v. Railway Co., 62 Mo. 207.    (2)    It is part of the master's duty to use ordinary care to furnish the employee a place to work reasonably safe as the nature of the employment permits, and not to expose him to any unknown risks not ordinarily incident to the service. Dayharsh v. Railroad Co., 103 Mo. 570.    (3)    Unless the danger or risk occasioned by the master's negligence is so glaring and obviously apparent to the servant as to threaten immediate and almost certain danger, then the servant neither assumes the risk nor can he be held guilty of contributory negligence as a matter of law. Hunter v. Busy Bee Candy Co., 307

Mo. 666. (4) Unless the danger was so apparent that no reasonably prudent man would think the work could be done safely, he should not be refused recovery. Bowman v. Light Co., 213 S. W. 161; Thorpe v. Railway Co., 89 Mo. 650. (5) The servant only assumes risks ordinarily incident to and inherent in the work itself. Haviland v. Railway Co., 172 Mo. 112. (6) The servant does not assume risks that are caused by the master's negligence. Williams v. Pryor, 272 Mo. 613. (7) Assumption of risk under the Federal Employer's Liability Act to be available as a defense must be pleaded. Adams v. Railroad, 287 Mo. 535. (8) Under the Federal Employer's Liability Act, contributory negligence is not a defense even though plaintiff was guilty of contributory negligence. Crecelius v. Railway Co., 284 Mo. 26. (9) The case was tried on the theory of common-law negligence, by plaintiff and defendant. The theory adopted in the trial court cannot be changed in the appellate court. Thompson v. Construction Co., 295 S. W. 491; Rositsky v. Burnes, 295 S. W. 491. (10) The appellant concedes respondent was entitled to recover on cause of action pleaded, unless his injury was the result of some other cause or mere accident. Appellant's instruction No. 2, supra. (11) Plaintiff's instruction on the measure of damages is in proper form. (12) Nondirection is not error. Johannes v. Becht Laundry Co., 272 S. W. 379; Hunter v. McElhaney, 48 Mo. App. 234; Powell v. Railroad, 255 Mo. 456. (13) If the plaintiff wanted an issue presented to the jury, he was to blame for not doing so. Powell v. Railroad, 255 Mo. 460. In the instant case defendant presented the issue in its Instructions 1 and 2. (14) The award of damages was modest and falls far short of being excessive. Linton v. St. Louis Lightning Rod Co., 285 S. W. 183; Stein v. Rainey, 286 S. W. 53; Rose v. St. Louis-San Francisco Ry. Co., 289 S. W. 913; Stoneham v. Davis, 280 S. W. 45; Gould v. C. B. & Q. R. R., 290 S. W. 135.

BENNICK, C.—This is an action for damages for personal injuries sustained by plaintiff while in the employ of defendant. The verdict of the jury was for plaintiff, in the sum of $7000, and from the judgment rendered thereon, defendant, after an unavailing motion for a new trial, has duly perfected this appeal.

The petition alleged that defendant was a common carrier of passengers and freight in interstate commerce; that it owned and operated lines extending across this State and into other States; that it was the duty of plaintiff, as an employee of defendant, to attend to refueling locomotive engines, and replenishing them with sand and water; that on February 23, 1924, he was directed by his foreman to refuel a certain engine; that it was necessary for plaintiff, in the performance of his duty, to go upon the top of said locomotive and the tank thereof to ascertain the amount of fuel oil required; that

while so engaged, he slipped upon the oily surface of the top of the tank, and was caused to fall, whereby he sustained serious and permanent injuries.

The particular charge of negligence relied upon was that defendant failed to exercise ordinary care to provide plaintiff with a reasonably safe place in which to work, in that defendant knew, or by the exercise of ordinary care could have known, that the surface of the top of the tank of said locomotive was dark and unlighted, and was slick and slippery, and covered with oil, but that, notwithstanding the same, defendant ordered and required plaintiff to work in said unsafe place, where, because of the unsafety thereof, and defendant's negligence, he was injured.

There was a further allegation that the locomotive upon which plaintiff was injured was used on the day in question, as well as prior and subsequent thereto, in interstate commerce.

The answer of defendant was a general denial.

The evidence disclosed that plaintiff was engaged at defendant's roundhouse, located at 3900 Chouteau avenue, in the city of St. Louis, as a hostler, and that his duties as such were to take engines into and out of the roundhouse, and to points where they were to be repaired. He was also required to station the engines at their proper positions when they were assigned to pull trains over the road, and to replenish them from time to time with fuel and other supplies.

On the night of February 23, 1924, plaintiff was directed by his foreman to get switch engine No. 3746, an oil-burning locomotive, in readiness for work by midnight. He found the engine standing just outside of the roundhouse, near the water and oil cranes. The oil tank on this engine was built in the tender, in the space where coal had formerly been stored for fuel. Its dimensions were given as four feet in width, and eight feet in length, and it extended about one and one-half feet above the top of the tender. The surface of the tank was level.

It appears that there was no light upon, and, in fact, no means afforded for lighting the top of the reservoir on this engine, in consequence of which plaintiff carried a lantern in his hand as he went about his task of measuring the amount of fuel in the tank. He had never been upon the top of this particular locomotive until on the occasion in question. Plaintiff had completed his measurements, when he discovered that the surface of the tank was covered with fuel oil of a dark color which blended with the black paint upon the tank. As he turned to pick up his lantern, his feet slipped upon the oily surface, causing him to lose his balance and fall from the tank down to the concrete base of the water crane, ten or twelve feet beneath. The greasy and dirty condition of the top of the oil reser-

220 Mo. App.—78.

voir was still apparent when an inspection of the engine was made on the following day.

Plaintiff had been doing work of this character for defendant for a month preceding the time when his injury was received, and had worked around locomotive engines in general for six years prior thereto.

Upon the question of whether the employment was interstate or only intrastate, the evidence showed no more than that this particular locomotive had been pulled up to the cranes from a day's work in the yards, and that it was assigned to the duty of switching cars in the St. Louis yards of the Terminal Railroad Association.

As plaintiff fell, he struck the concrete in somewhat of a sitting posture, and was rendered unable to arise. His cries brought several men to his assistance, who procured a stretcher and carried him to the storeroom thereon, whence he was conveyed in an ambulance to defendant's hospital. Arriving there, he was given a hypodermic injection of morphine at the direction of the physicians in charge, and was then placed in a Bradford frame, consisting of canvas stretched between two bars, with an opening left therein for the hips. He lay in this frame for seven weeks, suffering intense pain all the while. When his recovery became such as to permit him to arise, he was taken to his home in an automobile, but was required to report back to the hospital every week or so during the next six months for attention. He walked with the assistance of a cane for eight months after leaving the hospital.

Plaintiff testified that since his injury he had not been physically able to perform the duties ordinarily required of a railroad hostler; that he experienced continuous pains, extending from the small of his back down into his legs; that the right leg at times became numb and cold; that during the night he was frequently awakened with cramping in the muscles of his legs; that he had been rendered nervous and irritable; and that he was unable to do any sort of work which required lifting or stooping.

There was expert evidence that plaintiff's ailment was properly diagnosed as sciatica, or sciatic rheumatism, and that the same was the result of injury, and was a permanent condition. The doctor who testified for defendant, while disagreeing that plaintiff's sciatic trouble was traumatic in origin, admitted that sciatic rheumatism could be produced by a fall such as plaintiff received. This doctor, who incidentally had treated plaintiff when he was brought to the hospital, stated that plaintiff had sustained a right sacroiliac sprain, with severe paralysis of the lower right back, and that he suffered a great deal of pain.

It was shown that at the time plaintiff was injured he was earning $120 a month, and that for a period of fourteen months subsequent to the time his injury was sustained he was unable to do any work

at all. Thereafter he was employed for three months as a teamster, earning $3.50 a day, and, at the time of the trial, he had been engaged in light work at an ice plant for one month, at a salary of $30 a week.

The first point urged by defendant is that the court erred in refusing to give the peremptory instruction in the nature of a demurrer to the evidence, requested by defendant at the close of the whole case, for the alleged reason that it conclusively appeared from the evidence that plaintiff had assumed the risk of his injury, even though it may have grown out of defendant's negligence. In other words, defendant seeks to invoke the doctrine of assumption of risk as declared and applied by the Federal courts, namely, that an employee assumes, not only the risks ordinarily incident to his employment, but also the risks caused by his master's negligence, which are obvious, or fully known and appreciated by him.

The record of this case presents a most unusual situation. As we have heretofore indicated, plaintiff's petition alleged, in substance, that defendant was engaged in interstate commerce, and that plaintiff was injured while employed by it in interstate commerce. It was also alleged, however, that defendant owned and operated lines of railroad extending across the State. The effect of the petition, therefore, was such that, with the allegation respecting interstate commerce included, a good cause of action under the Federal Employers' Liability Act was stated, and, without it, only a cause of action under the common law appeared. Accordingly, if the question of defendant's liability was determined under the Federal Act, counsel are quite correct in their contention as to the rule to be applied respecting assumption of risk, as the same may have appeared from the evidence. However, if plaintiff recovered only under the prevailing rules of common law, independent of the Federal Act, whether or not he assumed the risk of his injury would of necessity be determinable under the doctrine as declared by our own courts.

Necessarily, plaintiff asserted only one right to recover for his injury, whether the liability of defendant arose under the Federal Act or otherwise, and, in either event, the case was equally cognizable in the forum which he selected. Had the proof shown that his injury was received in interstate commerce, as he alleged, the Federal Act would undoubtedly have been controlling, and a recovery could not have been had under the common law. In other words, the Federal Act would have been exclusive in its scope, and not merely cumulative. However, so far as was disclosed by the evidence, the casualty occurred outside of interstate commerce, and, consequently, the Federal Act was wholly without application. This leaves it for us to determine whether, eliminating the claim for recovery under the Federal Act, plaintiff was, nevertheless, entitled to go to the jury upon the facts pleaded and proven as they may have tended to make

1236 220 MISSOURI APPEAL REPORTS. [October,

a case for common-law negligence; or, whether, having regard to the state of the record before us, we should hold that he was entirely precluded from a recovery, as defendant intimates in its printed argument, because he failed to bear the burden of proving the interstate character of his employment at the moment of his injury.

At the outset we are mindful that defendant filed a general denial, thus squarely controverting plaintiff's allegation that he was employed in interstate commerce. Moreover, as we have heretofore indicated, the allegations of the petition were broad enough to include the hypothesis that defendant was engaged also in intrastate commerce. It must be borne in mind that the Federal Employers' Liability Act did not nullify or repeal, but only superseded the existing rules of law in a proper case, that is, when it conclusively appeared from the facts in evidence that the parties were engaged in interstate commerce. Thus, the mere allegation as to the interstate character of the employment did not render nugatory the remaining allegations, which, standing alone, disclosed a complete cause of action under the prevailing rules of common law. Neither was such allegation descriptive of any fact or condition essential to a recovery under the common law, if the other allegations were sustained by the proof.

There is absolutely nothing in the record to indicate that either party to this action regarded the same as having been submitted to the jury under other than the usual rules of common law. Counsel for defendant at no time, by a requested instruction or otherwise, specifically challenged the right of plaintiff to recover by reason of a failure of proof upon the issue of the interstate character of his employment; nor did counsel allege a variance between the pleadings and the proof. It is true that no amendment of the petition was sought or demanded by either party, but when effect is given to the rules of local practice, it appears that the allegation in the petition respecting interstate commerce was treated by the court and by both parties either as mere surplusage, or as having been eliminated. Thus we are constrained to rule, as has already been held by most respectable authority, that the petition, although stating a good cause of action under the Federal Employers' Liability Act, nevertheless afforded a basis for recovery under the common law, after the allegation that the injury had occurred in interstate commerce, not having been sustained by the proof, was eliminated. [Wabash R. Co. v. Hayes, 234 U. S. 86, 34 S. Ct. 729, 58 L. Ed. 1226; Hayes v. Wabash R. Co., 180 Ill. App. 511; Chicago R. I. & G. Ry. Co. v. Trout (Tex. Civ. App.), 224 S. W. 472; Baird v. Northern Pacific R. Co., 78 Wash. 67, 138 Pac. 325; Archibald v. Northern Pacific R. Co., 108 Wash. 97, 183 Pac. 95; Stoker v. Philadelphia & R. Ry. Co., 254 Pa. 494, 99 Atl. 28.]

This being true, our own rule as to assumption of risk is to be applied. No contention is, or could well be made that there was no substantial evidence as to defendant's negligence, upon proof of which the defense of assumption of risk, as we apply it, passed out of the case. No other reason for an outright reversal of the judgment has been presented to us. It follows, therefore, that the requested peremptory instruction in the nature of a demurrer to the evidence was properly refused.

Defendant next complains of plaintiff's only instruction, which was on the measure of damages. By this instruction, the jury were told that, if they found for plaintiff, they should allow him such damages for his physical injuries and for the injury to his nervous system as they might find he had sustained as a "direct result of defendant's negligence, if any." The contention is that this instruction did not limit the jury to a consideration of the charge of negligence which had been pleaded in the petition, and which had found support in the evidence, but, in the form given, constituted a roving commission to the jury to find defendant guilty of any negligence.

There might be some merit in the suggestion of learned counsel, were it not for the fact that by defendant's given instruction No. 2 the jury were told that, although they might find and believe from the evidence that plaintiff fell and was injured, yet if they further found that he was caused to fall as the result of some cause *other than slipping upon grease on top of the oil tank on the engine*, then plaintiff was not entitled to recover, and the verdict should be for the defendant. Thus, the effect of the latter instruction was to concede plaintiff's right to recover, if the jury should find that he slipped upon the oily surface of the tank, as pleaded in his petition, and testified to by him (irrespective, too, of what the character of his employment may have been). Instructions are to be read as a whole and as a single charge, and when plaintiff's instruction on the measure of damages, of which complaint is made, is construed in connection with defendant's instruction No. 2, the ambiguity therein disappears, and a consistent and harmonious declaration of the law is presented.

Lastly, defendant argues that the verdict in the sum of $7000 was grossly excessive for the actual injuries sustained. We have discussed the nature and extent of plaintiff's injuries at considerable length elsewhere herein, and it would serve no useful purpose to restate them in connection with our disposition of this particular assignment of error. There is no doubt that the verdict was high, but, nevertheless, in the light of our experience we can easily believe that some juries might have awarded even more. However this may be, the evidence showed actual loss in earnings in the approximate sum of $1750. With this item deducted, the award for the injuries alone shrinks to the more modest sum of $5,250. Bearing in mind that

plaintiff's injuries incapacitated him, not only for his previous oc-
cupation, but also for many other forms of manual labor, and that
the sciatic rheumatism from which he was suffering was a permanent
condition, we clearly cannot say that the verdict was of such size as
to shock the judicial conscience, from which it follows that our inter-
ference with it would be unwarranted. [Page v. Payne, 293 Mo.
600, 240 S. W. 156; Hinton v. Chicago & G. W. R. Co. (Mo. App.),
206 S. W. 396; Willis v. Buchanan County Quarries Co., 218 Mo.
App. 698, 269 S. W. 102.]

Finding no error in the trial of the case materially affecting de-
fendant's rights, the Commissioner recommends that the judgment
of the circuit court be affirmed.

PER CURIAM:—The foregoing opinion of BENNICK, C., is adopted
as the opinion of the court. The judgment of the circuit court is ac-
cordingly affirmed. *Daues, P. J., Becker* and *Nipper, JJ.,* concur.