Peter J. ROGERS and Karen
Rogers, Plaintiffs,

v.

CONSOLIDATED RAIL
CORPORATION,
Defendant.

No. 86–CV–1061.

United States District Court,
N.D. New York.

June 21, 1988.

Elkind, Flynn & Maurer, P.C., New York
City, for plaintiffs; Ira M. Maurer, of coun-
sel.

McNamee, Lochner, Titus & Williams,
P.C., Albany, N.Y., for defendant; Scott A.
Barbour, of counsel.

## MEMORANDUM–DECISION AND ORDER

CHOLAKIS, District Judge.

Plaintiffs Peter Rogers and his wife Kar-
en seek compensatory damages for person-
al injuries sustained while he was employed
by defendant Consolidated Rail Corporation

(Conrail). On July 25, 1986, plaintiff was a freight conductor on a Conrail train which departed from Massena, New York en route to Quebec, Canada. Plaintiff alleges that Conrail neglected to adhere to safety rules and regulations concerning his right to stop working for the purpose of eating a meal. As a result of Conrail's alleged failure to maintain safe working conditions and the alleged negligent supervision of the trainmaster, plaintiff became dizzy and fell from the train near Jacques Cartier Crossing in Valley Field, Quebec, Canada.

Plaintiff Peter Rogers seeks compensation from Conrail under the Federal Employers' Liability Act (FELA), 45 U.S.C. § 51 *et seq.* In addition, plaintiff brings an alternative cause of action under New York State Workers' Compensation Law § 11. Finally, pursuant to the FELA and the Workers' Compensation Law, plaintiff's wife brings a derivative cause of action seeking compensation for loss of her husband's services and consortium. Conrail has moved for dismissal of the entire complaint, pursuant to Fed.R.Civ.P. 12(b)(1) and (6), for lack of subject matter jurisdiction and failure to state a cause of action upon which relief can be granted.

■ Section 1 of the Federal Employers' Liability Act, 45 U.S.C. § 51, which is the FELA's main liability provision, states, in pertinent part:

> Every common carrier by railroad while engaging in commerce between any of the several States or Territories, or between any of the States and Territories, or between the District of Columbia and any of the States or Territories, or between the District of Columbia or any of the States or Territories *and any foreign nation or nations,* shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, ...

(emphasis added).

The FELA was enacted by Congress to provide for the uniform treatment of rail-road workers injured in the course of their employment as a result of the negligence of their employer or co-workers. The statute has enabled an injured railroad worker to overcome a wide variety of common law defenses, including contributory negligence, contractual waiver of liability, assumption of risk, and the fellow-servant rule, that had acted to bar recovery in the past. H.R.Rep. No. 1386, 60th Cong., 1st Sess. (1908); S.Rep. No. 460, 60th Cong., 1st Sess. (1908); S.Rep. No. 661, 76th Cong., 1st Sess. (1939). These departures from the common law evidence a "general congressional intent ... to provide liberal recovery for injured workers ..." *Kernan v. American Dredging Co.,* 355 U.S. 426, 432, 78 S.Ct. 394, 398, 2 L.Ed.2d 382 (1958).

Despite the FELA's broad remedial nature, the Supreme Court, in *Lauritzen v. Larsen,* 345 U.S. 571, 581, 73 S.Ct. 921, 927, 97 L.Ed. 1254 (1952), succinctly stated that "[w]e have held [the FELA] not applicable to an American citizen's injury sustained in Canada while in service of an American employer." *See also New York Cent. R.R. Co. v. Chisholm,* 268 U.S. 29, 31, 45 S.Ct. 402, 402, 69 L.Ed. 828 (1925) ("[The FELA] contains no words which definitely disclose an intention to give it extraterritorial effect, nor do the circumstances require an inference of such purpose.") In their papers and at oral argument, plaintiffs conceded that they lack a claim cognizable under the FELA. For this reason, plaintiff's first cause of action, brought pursuant to the FELA, is dismissed for lack of subject matter jurisdiction.[1]

■ Conrail also argues that plaintiff's second cause of action brought under § 11 of New York State Workers' Compensation Law is barred by the FELA. In *New York Cent. R.R. Co. v. Winfield,* 244 U.S. 147, 37 S.Ct. 546, 61 L.Ed. 1045 (1916), the Supreme Court held that the FELA is the

---

**1.** On March 6, 1988, Judge Thomas McAvoy, in a case involving similar facts, dismissed a FELA action in light of the *Chisholm* holding that the FELA lacks an extraterritorial effect. *Boak v. Consolidated Rail Corp.,* 87–CV–453 (N.D.N.Y.), *appeal docketed,* No. 88–7222 (2d Cir.). On appeal to the Second Circuit, plaintiff contends that *Chisholm* is factually distinguishable and no longer represents prevailing legal theory. The appeal is scheduled for argument on June 22, 1988.

exclusive means of recovery for injuries suffered by a railroad worker while engaged in interstate commerce. *See also Bretsky v. Lehigh Valley R.R.* 156 F.2d 594 (2d Cir.1946). Given the seemingly total preemption of state law by the FELA, Conrail contends that plaintiff's cause of action brought under New York State Workers' Compensation Law § 11 must be dismissed. *New York Cent. & Hudson River R.R. Co. v. Tonsellito,* 244 U.S. 360, 37 S.Ct. 620, 61 L.Ed. 1194 (1917). Since plaintiff Karen Rogers' remaining claim for loss of services and consortium is based either on the FELA or, alternatively, on the Workers' Compensation Law, Conrail asserts that it also must be dismissed.

At the initial hearing on this motion, plaintiffs were afforded the opportunity to submit a supplemental memorandum concerning the interpretation and scope of the word "commerce" as used in § 51 of the FELA. In an attempt to distinguish the present case from *Winfield* and its progeny, plaintiffs assert that the FELA does not apply because their injuries occurred extra-territorial in foreign commerce, as opposed to in interstate commerce. Relying on analogous federal statutes pertaining to the regulation of interstate commerce, plaintiffs argue that Congress intended to have the FELA apply only when an injury takes place within the territorial limits of the United States.

One of the statutes relied upon by plaintiffs is the Railway Labor Act (RLA), 45 U.S.C. § 151 *et seq.* (1981), which, in pertinent part, provides:

Fourth. The term "commerce" means commerce among the several States or between any State, Territory, or the District of Columbia *and any foreign nation,* or between any Territory of the District of Columbia and any State, or between any Territory and any other Territory, or between any Territory and the District of Columbia, or between points in the same State but through any other State or any Territory of the District of Columbia or any foreign nation.

45 U.S.C. § 151, par. 4 (1981) (emphasis added).

As noted by plaintiffs, this language is substantially similar to that employed in § 51 of the FELA. Plaintiffs contend, however, that despite the language of the RLA, its jurisdiction has been expressly limited, by the Interstate Commerce Act, 49 U.S.C. § 10501 (1979), to matters within the territorial limits of the United States. *See* 45 U.S.C. § 151, par. 1. Plaintiffs argue that Congress, in enacting the FELA, assumed that the same jurisdictional limits would apply.

Based upon the definitions and jurisdictional limits contained in these federal statutes, plaintiffs maintain that, for purposes of applying the FELA, the route the Conrail train took can be analyzed as follows. Between its departure point at Massena, New York and the Canadian border, the train was engaged in interstate commerce. After crossing the border, the train was engaged in foreign commerce until returning to the border. Upon recrossing the border, the train once again was engaged in interstate commerce. Under this scenario, plaintiff was injured in foreign commerce since he was injured in Quebec. As a result, plaintiff concludes that his cause of action is beyond the scope and jurisdiction of the FELA and is, therefore, actionable under New York Workers' Compensation Law § 11.

Plaintiffs' reliance on the RLA is misplaced since it was enacted nearly twenty years after the FELA and makes no mention of the FELA, its jurisdiction, or even the subject of tort liability. The RLA sets forth detailed procedures for the resolution of railroad-employee disputes arising out of the interpretation of collective bargaining agreements. *Union Pacific R. Co. v. Sheehan,* 439 U.S. 89, 94, 99 S.Ct. 399, 402, 58 L.Ed.2d 354 (1978). While the FELA was designed to give injured railroad workers a federal right to sue, "Congress specifically intended in the RLA to keep railroad labor disputes *out of the courts* and instead requires the use of grievance procedures and arbitration." *Lewy v. Southern Pac. Transp. Co.,* 799 F.2d 1281, 1289 (9th Cir.1986) (emphasis in original).

Plaintiff's argument of the "inapplicability" of the FELA, however, has a direct impact on the question of preemption. It is well established that Congress can preempt state law in several ways. First, the Congress may, in the legislation itself, expressly define the extent to which state law is preempted. *Shaw v. Delta Air Lines*, 463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983). Second, by evidencing an intent to occupy a given field, Congress can, even in the absence of express language, preempt any state law within that field. *Pacific Gas & Elec. Co. v. State Energy Resources Conservation & Dev. Comm.*, 461 U.S. 190, 203–04, 103 S.Ct. 1713, 1721–22, 75 L.Ed.2d 752 (1983); *Fidelity Federal Savings & Loan Assn v. De la Cuesta*, 458 U.S. 141, 153, 102 S.Ct. 3014, 3022, 73 L.Ed.2d 664 (1982). Finally, even if Congress has not totally displaced state authority in a particular area, state law is still preempted to the extent that it either makes it impossible to comply with both federal and state law, *Silkwood v. Kerr–McGee Corp.*, 464 U.S. 238, 248, 104 S.Ct. 615, 621, 78 L.Ed.2d 443 (1984), or when the state law "stands as an obstacle to accomplishment and execution of the full purposes and objectives of Congress." *Michigan Canners and Freezers Ass'n, Inc. v. Agricultural Marketing and Bargaining Board*, 467 U.S. 461, 469, 104 S.Ct. 2518, 2523, 81 L.Ed.2d 399 (1984) (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941)). Preemption is not favored "in the absence of persuasive reasons—either that the nature of the regulated matter permits no other conclusion, or that the Congress has unmistakably so ordained." *Chicago & N.W. Tr. Co. v. Kalo Brick & Tile*, 450 U.S. 311, 317, 101 S.Ct. 1124, 1130, 67 L.Ed.2d 258 (1981). Central to a preemption inquiry then is the ascertainment of Congressional intent.

By its terms and subsequent judicial interpretations, the scope of the FELA has consistently been construed as being extremely broad in order to spread its intended beneficial impact as wide as possible. *See, e.g., Lancaster v. Norfolk and Western R. Co.*, 773 F.2d 807, 812–13 (7th Cir. 1985), *cert. denied*, —— U.S. ——, 107 S.Ct.

1602, 94 L.Ed.2d 788 (1987) (FELA covers intentional torts although, by its terms, it only encompasses negligence). As a result, the Supreme Court has, in reviewing FELA cases, consistently "adopted a 'standard liberal construction in order to accomplish [Congress'] objects.'" *Atchison, T. & S.F.R. Co. v. Buell*, 480 U.S. 557, ——, 107 S.Ct. 1410, 1414, 94 L.Ed.2d 563, 571 (1987) (quoting *Urie v. Thompson*, 337 U.S. 163, 180, 69 S.Ct. 1018, 1030, 93 L.Ed. 1282 (1949)).

Innumerable cases, for more than seventy years, have held that the FELA preempts state law remedies to the extent that an injured railroad worker, who has a cause of action under the FELA, cannot bring a state law tort action. *See New York Cent. & Hudson, R.R. Co. v. Tonsellito*, 244 U.S. 360, 361–62, 37 S.Ct. 620, 620–21, 61 L.Ed. 1194 (1917); *Seaboard Air Line R. Co. v. Horton*, 233 U.S. 492, 500–01, 34 S.Ct. 635, 638–39, 58 L.Ed. 1062 (1914); *Mondou v. New York, New Haven, and Hartford R.R. Co.* (Second Employers' Liability Cases), 223 U.S. 1, 53–55, 32 S.Ct. 169, 176–177, 56 L.Ed. 327 (1912); *Janelle v. Seaboard Coast Line R.R.*, 524 F.2d 1259, 1261 (5th Cir.1975). Nevertheless, the courts in construing the FELA have consistently limited the liability imposed by it to injuries which occurred within the territorial limits of the United States. *New York Cent. R.R. Co. v. Chisholm*, 268 U.S. 29, 45 S.Ct. 402, 69 L.Ed. 828 (1925). *See also Sandborg v. McDonald*, 248 U.S. 185, 195, 39 S.Ct. 84, 86, 63 L.Ed. 200 (1918) (federal legislation is "presumptively territorial"); *United States v. Pizzarusso*, 388 F.2d 8 (2d Cir.), *cert. denied*, 392 U.S. 936, 88 S.Ct. 2306, 20 L.Ed.2d 1395 (1968).

As a result, despite its express coverage of both interstate and foreign commerce, the FELA does not provide a remedy for a railroad worker injured outside the United States. This is despite Congress' power to regulate the extra-territorial acts of United States citizens and corporations. *Skiriotes v. Florida*, 313 U.S. 69, 77, 61 S.Ct. 924, 929, 85 L.Ed. 1193 (1941). As stated by the Supreme Court in *Lauritzen v. Larsen*, 345 U.S. 571, 581, 73 S.Ct. 921, 927, 97

L.Ed. 1254 (1952), "[w]e have held [the FELA] not applicable to an American citizen's injury sustained in Canada while in service of an American employer." The inapplicability of the FELA to extra-territorial injuries has been restated in cases strikingly similar to the present factual situation. *See, e.g., Cox v. Chesapeake & Ohio R.R. Co.*, 494 F.2d 349, 350 (6th Cir.) (per curiam), *cert. denied*, 417 U.S. 977, 94 S.Ct. 3184, 41 L.Ed.2d 1146 (1974) (American injured in Canada while performing overtime work for an American railroad); *Vachon v. Canadian Pac. Ltd.*, 526 F.Supp. 1186, 1187 (D.Me.1981) (American injured in Canada while working on a Canadian Pacific train operating between Maine and Quebec, Canada).

If the FELA encompassed extra-territorial injuries, but chose not to provide a remedy to the injured worker, then state compensation laws which might have provided a remedy would clearly be preempted. No state intrusion on federal authority appears possible, however, when the FELA has been held "not applicable" to injuries occurring outside the United States. *See Lauritzen*, 345 U.S. at 581, 73 S.Ct. at 927. For this same reason, the FELA's goal of uniform treatment for injured workers is not impaired in such cases. In this limited factual situation, there is simply no danger of conflict with respect to remedy or in administration between the FELA and state law. As such, this case is readily distinguishable from the long line of cases where preemption has resulted. Given the broad remedial purpose behind the FELA and the liberal construction employed by the courts to accomplish this Congressional goal, *see, e.g., Atchison, T. & S.F.R. Co.*, 480 U.S. at ———, 107 S.Ct. at 1413–14, 94 L.Ed.2d at 570–71, it is inconceivable that Congress intended the FELA to preempt an injured railroad worker from seeking a remedy under state law when the FELA itself is not applicable and does not provide a remedy. The only reasonable inference is that Congress intended to permit such a worker to seek recovery elsewhere. *See, e.g., Wabash R. Co. v. Hayes*, 234 U.S. 86, 89–90, 34 S.Ct. 729, 729–730, 58 L.Ed. 1226 (1914)("[I]f the injury oc-

curred outside of interstate commerce, the [FELA] was without application, and the law of the state was controlling."); *Hilderbrand v. St. Louis S.F.R. Co.*, 220 Mo. App. 1229, 298 S.W. 1069 (1927). Therefore, plaintiffs' second cause of action under New York Workers' Compensation Law § 11 will not be held preempted by the FELA.

■ Even if plaintiffs' claims under Workers' Compensation Law § 11 are not preempted by the FELA, Conrail asserts that Canadian law should govern the rights and remedies of the parties. Neither party cites to a particular provision of Canadian law, but instead each uses the generic term "Canadian law". When dealing with injuries suffered by an American railroad employee in Canada, Conrail points out that the courts have traditionally applied the doctrine of *lex loci delictus* in determining the law to be applied. *Chisholm*, 268 U.S. at 32, 45 S.Ct. at 403; *Cox*, 494 F.2d at 350; *Vachon*, 526 F.Supp. at 1186. Therefore, since plaintiff was injured in Canada, Conrail insists that plaintiff's remedy, if any, is under the law of Canada and not New York Workers' Compensation Law § 11.

In each of these cases, the *lex loci delictus* doctrine was employed exclusively in the context of determining whether the FELA or Canadian law should be applied. Holding that the FELA had no application in such cases, these courts dismissed, for lack of subject matter jurisdiction, actions brought under the FELA. In this case, however, it has already been determined, based upon *Chisholm* and its progeny, that the FELA has no application. Unlike *Chisholm*, *Cox*, and *Vachon*, the plaintiffs in the present case, by seeking relief under New York law, have interjected an additional possible remedy. The question to be determined, therefore, is whether plaintiffs' remedy, if any, lies under the laws of Canada or New York.

As a federal court sitting in a diversity action, this Court must apply the choice of law rules of the forum state, in this case New York. *Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Having

for years utilized the *lex loci delictus* doctrine in tort cases, the New York State Court of Appeals has developed an "interest analysis" approach to determine which jurisdiction's law to apply. *See Neumeier v. Kuehner*, 31 N.Y.2d 121, 335 N.Y.S.2d 64, 286 N.E.2d 454 (1972); *Babcock v. Jackson*, 12 N.Y.2d 473, 481, 240 N.Y.S.2d 743, 749, 191 N.E.2d 279, 283 (1963). Rather than treating as conclusive the jurisdiction where the injury occurred, emphasis is placed on the law of the jurisdiction having the most significant contacts with the matter in dispute. Departure from the *lex loci delictus* doctrine is most appropriate when New York has a greater "concern" or "interest" in the controversy than the jurisdiction of the situs of the injury. *Schultz v. Boy Scouts of America, Inc.*, 65 N.Y.2d 189, 197–98, 491 N.Y.S.2d 90, 95, 480 N.E. 2d 679, 684 (1985); *Miller v. Miller*, 22 N.Y.2d 12, 15, 290 N.Y.S.2d 734, 737, 237 N.E.2d 877, 879 (1968).

New York clearly has a great interest in the resolution of this controversy. Plaintiff is a resident of New York. Similarly, plaintiff was employed at Conrail's Massena, New York freight facility where he reported for work and remained under Conrail's control until the time of his injury. At the time of his injury, plaintiff was working in Canada solely on a transitory basis and not at a fixed location. After initial hospitalization in Canada, plaintiff has subsequently been exclusively treated in New York. It is apparent that New York has a dominant interest in the protection of the rights of the parties involved. *See, e.g., O'Connor v. Lee–Hy Paving Corp.*, 579 F.2d 194, 205–06 (2d Cir.1978).

It is equally obvious that New York, like most states, attaches great importance to assuring the health and welfare of its citizens, with special emphasis placed on those injured in the course of their work. To effectuate this policy, the state has enacted a comprehensive statutory scheme intended to provide compensation for an injured worker. Covered by the compensatory scheme are workers injured in hazardous employment, including the operation of railways. N.Y.Work.Comp.Law § 3, subd. 1, Group 7 (McKinney 1965). Generally, a worker, injured during the course of his employment, files a claim for compensation with his employer or the chairman of the Workers' Compensation Board. N.Y.Work. Comp.Law §§ 10, 20 (McKinney 1965 & Supp.1988). On the other hand, section 11 permits an injured employee, who is not provided with compensation insurance by his employer, to elect between claiming compensation under the statute or, alternatively, maintaining an action in court for damages against his employer. Having chosen to seek this "alternative remedy", the injured employee is precluded from also filing a claim for compensation. Conrail does not deny that it did not provide plaintiff with compensation insurance.[2]

The New York Court of Appeals has stated that "being remedial in character [the Workers' Compensation Law] is to be construed liberally to accomplish the economic and humanitarian objects of the act." *Holcomb v. The Daily News*, 45 N.Y.2d 602, 607, 412 N.Y.S.2d 118, 121, 384 N.E.2d 665, 668 (1978) (quoting *Matter of Husted v. Seneca Steel Serv.*, 41 N.Y.2d 140, 145, 391 N.Y.S.2d 78, 82, 359 N.E.2d 673, 677 (1976)). "Though the Work[er's] Compensation Law does not define its territorial scope, it does create a presumption that in the absence of substantial evidence to the contrary, 'the claim comes within the provisions of this chapter.' (Workmen's Compensation Law, § 21, subd. 1)." *Matter of Rayford v. National Union of Hosp. & Nursing Home Employees*, 57 A.D.2d 975, 976, 394 N.Y.S.2d 738, 739 (3rd Dept.1977). Whether an out-of-state accident is compensable under the Workers' Compensation Law depends on whether the employment has sufficient contacts with New York to

---

**2.** To state a valid cause of action under the "alternative remedy", plaintiff must not only allege but will also have to prove Conrail's failure to secure compensation insurance. *See, e.g., Finch v. Swingly*, 42 A.D.2d 1035, 348 N.Y. S.2d 266 (4th Dept.1973). Although plaintiff alleged in his complaint that Conrail failed to secure compensation insurance, no answer to this assertion has been filed by Conrail. In its motion papers, Conrail has not rebutted plaintiff's assertion.

conclude that employment is based there. *Matter of Nashko v. Standard Water Proofing Co.*, 4 N.Y.2d 199, 173 N.Y.S.2d 565, 149 N.E.2d 859 (1958). If the circumstances of employment indicate that the employment is located outside New York, then the injured employee has no remedy under the statute. Based upon factors previously discussed, it is apparent that, for purposes of applying the Workers' Compensation Law, plaintiff was employed in New York at the time of the accident. *See, e.g., Rutledge v. Al. G. Kelly & Miller Bros. Circus*, 18 N.Y.2d 464, 473–74, 276 N.Y.S.2d 873, 879, 223 N.E.2d 334, 338 (1966); *Hartham v. George A. Fuller*, 89 A.D.2d 720, 721, 453 N.Y.S.2d 843, 845 (3rd Dept.1982); *Matter of Stacy v. Matthew Bender Co.*, 86 A.D.2d 913, 914, 448 N.Y.S.2d 532, 533 (3rd Dept.1982).

As previously mentioned, neither party has cited any particular provision of Canadian law whether federal or provincial. This Court is unable to consider what policy interest, if any, Canada or Quebec would have in this factual situation or whether this interest is greater than that evidenced by New York's statutory scheme. Based upon the arguments submitted, therefore, Conrail's motion to dismiss the second cause of action is denied with leave to renew upon the submission of competent legal authority.

■ Conrail finally asserts that the third claim must be dismissed because there is no basis for a derivative cause of action for loss of services and consortium under the Workers' Compensation Law. Section 11 of that law provides, in pertinent part:

The liability of an employer prescribed by the last preceding section [Section 10] shall be exclusive and in place of any other liability whatsoever, to such employee, his personal representatives, spouse, parents, dependents or next of kin, or anyone otherwise entitled to recover damages, at common law or otherwise on account of such injury or death ...

As a general rule, therefore, if compensation is provided under the statute, "that liability is exclusive and in the stead of any other employer's liability whatsoever." *O'Rourke v. Long*, 41 N.Y.2d 219, 221, 391 N.Y.S.2d 553, 556, 359 N.E.2d 1347, 1350 (1976). Under the statute, an injured worker is "provided a swift and sure source of benefits" in exchange for relinquishing common law tort actions he might otherwise have against his employer. *Id.*

The public policy reasoning behind the exclusivity rule is absent, however, when the employer fails to provide compensation insurance coverage. As a result, section 11 provides an exception which states

[I]f an employer fails to secure the payment of compensation for his injured employees and their dependents as provided in section fifty of this chapter, an injured employee, or his legal representative in case death results from the injury, may at his option, elect to claim compensation under this chapter, or to maintain an action in the courts for damages on account of such injury; ....

Given Conrail's failure to provide compensation insurance, the plaintiffs are entitled to bring a plenary tort suit. *O'Rourke*, 41 N.Y.2d at 224, 391 N.Y.S.2d at 558, 359 N.E.2d at 1352. *See also Burke v. Torres*, 120 A.D.2d 283, 285, 509 N.Y.S.2d 11, 13 (1st Dept.1986) (Section 11 subjects an employer "to personal and unlimited liability for its failure to obtain coverage.").

In sum, defendant's motion to dismiss plaintiffs' first cause of action under the Federal Employers' Liability Act is granted, pursuant to Fed.R.Civ.P. 12(b)(1), for lack of subject matter jurisdiction. Defendant's motion to dismiss the remaining claims brought under New York Workers' Compensation Law § 11 is denied.

It is so ordered.