**Dawn M. PRIESTMAN, as She is the personal Representative of the Estate of Harden C. Priestman, Plaintiff,**

v.

**CANADIAN PACIFIC LTD., Defendant.**

**Civ. No. 91–0031–B.**

United States District Court, D. Maine.

Jan. 14, 1992.

4. Trial is scheduled to commence on February 10, 1992.

James F. Freeley, Jr., Boston, Mass., John E. Harrington, Winterport, Me., for plaintiff.

Bruce C. Gerrity, Stephen E.F. Langsdorf, Preti, Flaherty, Beliveau & Pachios, Augusta, Me., for defendant.

## ORDER AND MEMORANDUM OF DECISION

BRODY, District Judge.

This case is before the Court on Defendant Canadian Pacific's Motion to Dismiss. Plaintiff, Dawn Priestman, the widow and personal representative of the Estate of Harden C. Priestman ("Priestman"), asserts negligence claims under the Federal Employer Liability Act, 45 U.S.C. § 51 *et seq.* (FELA), against Canadian Pacific Ltd. ("CP"), Priestman's former employer. In addition, Plaintiff brings an alternative cause of action for negligence under Maine common law, a companion wrongful death

claim under 18–A M.R.S.A. § 2–804 and a derivative action for loss of consortium.

Defendant moves for dismissal under Fed.R.Civ.P. 12(b)(1) and (6) for lack of subject matter jurisdiction and failure to state a cause of action upon which relief may be granted. Alternatively, Defendant moves for summary judgment.

Priestman, a citizen of Maine, was employed by CP, a Canadian railroad corporation doing business in Canada and certain states within the United States (including Maine) as a common carrier in interstate and international commerce. On November 19, 1980 and while at work at Lac Megantic, Quebec, Canada, Priestman fell down a flight of stairs. As a result of the fall Priestman was severely injured and remained disabled until his death on April 7, 1989.

Shortly after the accident, the Quebec Workers' Compensation Commission ("CSST") began providing benefits to Priestman. Since 1980, Defendant, through the CSST, has extended $514,214 to or on behalf of Priestman. This includes $173,129 paid directly to Priestman and $341,085 paid for expenses and medical providers in his behalf. Included in "expenses" was an $800.00 per month salary paid to Dawn Priestman for the provision of nursing services for her husband.

Defendant raises several grounds in support of its motions.

## 1. FELA

■ Defendant contends that Plaintiff's claims under FELA must be dismissed because the underlying injury occurred in Canada. The Court agrees.

FELA was enacted by Congress to provide for the uniform treatment of railroad workers injured in the course of their employment as a result of the negligence of their employer or co-workers. *Rogers v. Consolidated Rail Corp.*, 688 F.Supp. 835, 836 (N.D.N.Y.1988), *aff'd* 948 F.2d 858 (2nd Cir.1991). Section 1 of FELA, which is

FELA's main liability provision, states in pertinent part:

"Every common carrier by railroad while engaging in commerce between any of the several States or Territories, or between any of the States and Territories, or between the District of Columbia or any of the States or Territories and *any foreign nation or nations*, shall be liable in damages to any person suffering injury while he is employed by such carrier in commerce"

45 U.S.C. § 51 (emphasis added). Despite FELA's broad remedial nature, and its express coverage of both interstate and foreign commerce, FELA does not provide a remedy for a railroad worker injured outside the United States. *New York Cent. R.R. Co. v. Chisholm*, 268 U.S. 29, 31, 45 S.Ct. 402, 402, 69 L.Ed. 828 (1925) ("[FELA] contains no words which definitely disclose an intention to give it extraterritorial effect, nor do the circumstances require an inference of such purpose."). *See also Vachon v. Canadian Pacific Ltd.*, 526 F.Supp. 1186 (D.Me.1981); *Cox v. Chesapeake Ohio R.R. Co.*, 494 F.2d 349 (6th Cir.), *cert. denied*, 417 U.S. 977, 94 S.Ct. 3184, 41 L.Ed.2d 1146 (1974); *Boak v. Consolidated Rail Corp.*, 850 F.2d 110 (2nd Cir.1988). FELA lacks an extraterritorial effect and therefore Defendant's motion to dismiss counts I and II of Plaintiff's Complaint is GRANTED. Fed.R.Civ.P. 12(b)(1).[1]

## 2. FEDERAL PREEMPTION OF STATE LAW CLAIMS

■ It is clear that FELA does not itself provide a remedy for extraterritorial injuries. Nevertheless, Defendant contends that FELA should be interpreted to preempt state-law causes of action. The Court disagrees.

It is clear that if FELA encompassed extra-territorial injuries and Congress chose not to provide a remedy to the injured worker, then causes of action based on state statutory or common law would be preempted. However, FELA does not ap-

---

**1.** Dismissal of Plaintiff's claims under FELA does not strip the Court of jurisdiction to consider the remaining state-law claims. The Court has jurisdiction under 28 U.S.C. 1332. The parties are citizens of different states and the amount in controversy is in excess of $50,000.

ply extraterritorially. To hold that FELA fails to provide a remedy for injuries suffered outside the United States and preempts state-law remedies would, therefore, leave a Plaintiff without any redress under United States law. Nothing in FELA or its legislative history suggests that Congress intended to leave American citizens injured abroad without a remedy under U.S. law. To the contrary, Congress has demonstrated an "unyielding insistence that FELA be liberally construed to facilitate recovery." *Rogers* 1991 WL at *5. Given this history, it would be incongruent to now interpret FELA to deprive injured railroad employees of a remedy under United States law. The only reasonable inference is that Congress intended to permit such workers to seek recovery based on state law. *Rogers,* 688 F.Supp. at 839.

### 3. THE MAINE WORKERS' COMPENSATION ACT

Generally, an employee injured in the course of his employment must file a claim for compensation under the Maine Workers' Compensation Act ("Act"). 39 M.R.S.A. § 1 *et seq.* As long as an employer has secured the payment of compensation in conformity with the Act the employer is exempted from civil actions involving personal injuries "sustained by an employee arising out of and in the course of his employment, or for death resulting from those injuries." 39 M.R.S.A. § 4. On the other hand, if an employer fails to secure the payment of compensation in conformity with the Act an injured employee may elect between claiming compensation under the Act or, alternatively, maintaining a civil action for damages against his employer. 39 M.R.S.A. § 21–A.

Defendant does not deny that it did not secure compensation insurance for the Plaintiff. Rather, Defendant contends that Section 21–A is inapplicable. Section 2(5)(A)(1) defines "employees" for purposes of the Act. Defendant asserts that pursuant to Section 2(5)(A)(1) Priestman is not an "employee" for whom CP was required to

secure compensation insurance. Therefore, Defendant maintains that it was in compliance with the Act and Plaintiff is barred from maintaining this civil action.

■■■ Defendant's interpretation of Section 2(5)(A)(1) is flawed.[2] The Act excludes "persons engaged in interstate or foreign commerce" who are "within the exclusive jurisdiction ... of the laws of the United States." 39 M.R.S.A. § 2(5)(A)(1). As discussed *supra,* Congress has chosen not to provide a remedy under FELA for injuries which take place outside the United States. Congress chose not to preempt this area. A U.S. citizen working for a railroad in Canada is *not* under the "exclusive jurisdiction" of federal law.

The Court finds that Priestman was an "employee" under the Act, that Defendant failed to secure compensation in compliance with the Act and that Plaintiff may bring a plenary tort suit against the Defendant pursuant to Section 21–A.

The Court recognizes that this conclusion makes Defendant amenable to a civil action under a section of the Act which is admittedly punitive in nature. However, as the Second Circuit recently stated, "[r]ailroads have known since 1925, when *Chisholm* was decided, that FELA afforded no remedy to a United States employee injured abroad. Yet, [Defendant] chose to disregard the mandate of [Maine's Workers' Compensation Act], apparently on the assumption that United States courts would relegate resident employees injured abroad to seek recovery under foreign law. This reliance clearly entailed the risk that [Defendant's] construction of FELA might be erroneous." *Rogers,* 948 F.2d at 863.

### 4. CHOICE OF LAW

Defendant maintains that if FELA does not preempt the state-law causes of action and the Workers' Compensation Act does not bar a suit at common law, this Court must nevertheless apply the law of Quebec, Canada.

---

**2.** Assuming arguendo that Priestman was not an "employee" for the purposes of the Act, Section 4 would still not act as a bar. Section 4 only exempts an employer from liability for injuries sustained by an *"employee"* arising out of and in the course of his employment.

As a federal Court sitting in a diversity action, this Court must apply the choice of law rules of the forum state, in this case Maine. *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941).

In looking to the law of Maine, this Court finds that in choice of law questions arising in tort cases, the Maine Supreme Judicial Court sitting as the Law Court has specifically endorsed the "most significant contacts and relationships" test of the Restatement (Second) of Conflict of Laws §§ 145–146 (1971). *Kenerson v. Stevenson*, 621 F.Supp. 1179 (D.Me.1985). Section 146 of the Restatement (Second) counsels that in an action for personal injury[3] the court should apply the law of the state where the injury has occurred unless another state has a more significant relationship to the occurrence and the parties. Since the injury in this case took place in Quebec, the Court must determine whether "the presumptive applicability of the law of [Quebec] is overcome by policy considerations or by an imbalance of contacts." *Mason v. Southern New England Conference Association of Seventh–Day Adventists*, 696 F.2d 135, 137 (1st Cir.1982).

■ The contacts in this case are primarily with the State of Maine. Priestman resided in Maine, worked out of Brownsville Junction, Maine, was called to Quebec for an emergency and except for his initial hospitalization, was hospitalized and cared for in Maine. Moreover, the State of Maine has an interest in assuring the welfare of its citizens, especially those injured in the course of their employment. *See* 39 M.R.S.A. § 1 *et seq.* Thus, Maine and not Quebec[4] has the dominant interest in this controversy and Maine law should apply.

### 5. STATUTE OF LIMITATIONS

■ Faced with the application of Maine law, Defendant counters by arguing that Plaintiff's causes of action are barred by the applicable statute of limitations. 14 M.R.S.A. § 752. Section 752 requires that a civil action be commenced within six years after the cause of action accrues. Here, Plaintiff's suit was initiated eleven years after Priestman's injury. Without a tolling Plaintiff's suit would be barred. In this case, however, tolling is appropriate. For the purposes of the tolling statute, 14 M.R.S.A. § 853, the Court finds that Priestman was "mentally ill" at the time the action accrued. (Priestman's mental illness was caused by his injuries).

The statute of limitation is tolled until the disability is lifted. 14 M.R.S.A. § 853. Defendant contends that Priestman's disability was lifted in 1982 as evidenced by a power of attorney executed by Priestman. Plaintiff asserts that Priestman remained disabled from the time of the accident until his death, never sufficiently regaining his faculties. This is clearly a question of material fact to be determined by the jury. Accordingly, Defendant's motion to dismiss and motion for summary judgment, to the degree that they were based on the applicable statute of limitations, are DENIED.

### 6. RES JUDICATA, WAIVER AND ELECTION OF REMEDIES

Finally, Defendant contends that Plaintiff's claims should not be heard because Plaintiff has already been fully compensated for his injuries under Canadian law.

■ The Supreme Court has held that an award made under the workers' compensation statute of a state of the United States will not bar a proceeding against the same person under the applicable statute of a sister State unless the first state has declared by statute or court decision that its remedy, if pursued to an award, should be exclusive. *Industrial Comm'n of Wisconsin v. McCartin*, 330 U.S. 622, 627–28, 67 S.Ct. 886, 889–90, 91 L.Ed. 1140 (1947). Going one step further a plurality of the Court in *Thomas v. Washington Gas Light*

---

3. Plaintiff's actions for wrongful death and loss of consortium parallel personal injury actions and the Court finds § 146 of the Restatement (Second) equally applicable.

4. This is not to deny Quebec's interest in seeing that its corporations are not subject to unlimited liability and that its administrative tribunal's decisions respected. These interests can and will be protected under the application of Maine law. See § 6 *infra*.

*Co.,* suggested that a workers' compensation award in a sister state *cannot* preclude a second supplemental award elsewhere:

> "We therefore would hold that a State has no legitimate interest within the context of our federal system in preventing another State from granting a supplemental compensation award when that second State would have the power to apply its workmen's compensation law in the first instance. The Full Faith and Credit Clause should not be construed to preclude successive workmen's compensation awards."

*Thomas v. Washington Gas Light Co.,* 448 U.S. 261, 286, 100 S.Ct. 2647, 2663, 65 L.Ed.2d 757 (1980). Reading these cases together, it is clear that Plaintiff would be barred from seeking a supplemental award under Maine's Workers' Compensation Act, if at all, only if the second award would violate the Full Faith and Credit Clause. In this case there can be no such violation. The first award was made in Quebec, a Canadian province, under provincial law by a provincial administrative commission. Quebec is not a sister state. The Full Faith and Credit Clause, grounded in federalism, applies only to judgments entered by the administrative boards or courts of sister states.[5]

Accordingly, the receipt of benefits by Priestman does not preclude Plaintiff from bringing this action pursuant to Section 21–A of the Maine Workers' Compensation Act. Thus, Defendant's motion to dismiss and motion for summary judgment on counts III, IV and V must fail.

SO ORDERED.

---

**5.** Defendant claims that comity should require the same result. We disagree. Comity, is not a constitutional mandate nor a rule of law. *See Somportex, Ltd. v. Philadelphia Cherry Gum Corp.,* 453 F.2d 435, 440 (3rd Cir.1971). This Court will not use comity to extend the full rigors of the Full Faith and Credit Clause to decisions rendered by foreign administrative tribunals. Comity requires only that we give res judicata effect to the CSST's decision and findings of fact as though it was an American tribunal. Where a Plaintiff seeks a supplemental award pursuant to his own states workers' compensation laws, res judicata will not act as a bar. Moreover, even if we were to find the Full Faith and Credit Clause applicable, it is doubtful whether the holding in *Thomas* could be overcome. Of course, the amount already paid by Defendant, through the CSST, will be credited against any award in this case.